KAREN R. ROBBLEE, Executrix of the Estate of John R. Robblee; ANTHONY JONES, Administrator of the Estate of Flora Winstead Jones; F. MICHAEL BROWN ELAINE GORDON BROWN; CARMEN ELIZABETH DAVIS; JOHN WESLEY DAVIS, III; JULIETTE PERRY SHIPLEY; AND JOAN STEVENS SHEPHERD v. BUDD SERVICES, INC.; SUMITOMO ELECTRIC LIGHTWAVE CORP., AND LITESPEC INC.

No. COA99-348

(Filed 7 March 2000)

**Emotional Distress— negligent infliction—concern for own welfare—foreseeability**

The trial court did not err in granting summary judgment in favor of defendant security company on plaintiff Shipley's negligent infliction of emotional distress claim, based on her concern for her own welfare when an enraged former co-worker came back to plaintiff's workplace and killed two people, because plaintiff's emotional distress was not a reasonably foreseeable consequence of any negligent conduct resulting from defendant's failure to retrieve the former co-worker's temporary access card to the workplace building.

Appeal by plaintiff from order entered 18 November 1998 by Judge Ronald L. Stephens in Durham County Superior Court. Heard in the Court of Appeals 8 December 1999.

*Michaux & Michaux, P.A., by Eric C. Michaux, for plaintiff-appellant.*

*Yates, McLamb & Weyher, L.L.P., by Dan J. McLamb and John W. Minier, for defendant-appellee.*

MARTIN, Judge.

On 13 April 1994, Ladislav Antilak, a former employee of Sumitomo Electric Lightwave Corp. and Litespec, Inc., (hereinafter collectively referred to as "Sumitomo") returned to his former workplace with a firearm, killed two Sumitomo employees, and wounded others before ending his own life. Antilak had been employed at Sumitomo as a fiber optic cable inspector and had frequent difficulties with fellow employees, including Flora Jones and Juliette Shipley. These difficulties culminated in August 1993 with Antilak's indication that he was going to resign and a decision by Craig Stoke, a Sumitomo manager, to immediately accept the resignation.

Budd Services, Inc., ("Budd") provided security services for Sumitomo, including issuance and control of ID badges and electronic access cards. Budd was notified that Antilak was not to be allowed to enter the Sumitomo premises on 9 August 1993. On the morning of 9 August, Stoke was at the gate with a Budd guard when Antilak arrived. When Stoke told Antilak that his resignation was effective immediately, Antilak revved his engine and drove the car through the gate. Stoke, accompanied by sheriff's deputies, approached Antilak, demanded that he surrender his Sumitomo ID, and escorted Antilak out of the building.

Eight months later, on 13 April 1994, Antilak returned to the Sumitomo facility, and, using a temporary access card, entered the building where he had previously worked. He approached Flora Jones from behind and shot her in the back of the head, killing her instantly. Joan Shepherd, who was sitting across from Flora Jones, yelled to Juliette Shipley, who was in another room, to run. Both Joan Shepherd and Juliette Shipley ran through the building; Shipley hid in a large machine and heard the shots, but did not witness any of the shootings. Antilak continued through the building, shooting into the walls and ceilings, until he encountered Carmen Davis, whom he shot in the shoulder and back. Mike Brown, another employee, attempted to help Ms. Davis and was shot in the abdomen, hand, and neck. Antilak then went to the second floor, where he shot and killed John Robblee. Antilak then shot himself in the head and died. A working temporary access card to the building was found on his body.

Seven plaintiffs, including Juliette Shipley, filed suit against Sumitomo and Budd, alleging various claims arising out of the shooting incident. All of the plaintiffs' claims against Sumitomo were settled and dismissed with prejudice. In addition, all plaintiffs except Juliette Shipley voluntarily dismissed their claims against Budd. Budd's motion for summary judgment as to Juliette Shipley's remaining claim was allowed; she appeals.

---

Juliette Shipley seeks damages from Budd for emotional distress suffered by reason of Budd's negligence. Plaintiff Shipley alleges that Budd negligently performed its contractual duty to provide security at Sumitomo, and this negligence caused her to suffer severe emotional distress. The issue presented by her appeal is whether it was reasonably foreseeable that she would suffer emotional distress as a result of Budd's negligent failure to retrieve a temporary access card from Antilak and to otherwise prevent his entry into the Sumitomo

plant. We hold that it was not and affirm the entry of summary judgment in favor of Budd.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). The evidence and all reasonable inferences which can be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Norris v. Zambito*, 135 N.C. App. 288, 520 S.E.2d 113 (1999). Summary judgment is proper " 'where the evidence fails to establish negligence on the part of defendant . . . or establishes that the alleged negligent conduct was not the foreseeable and proximate cause of plaintiff's injury.' " *Gardner v. Gardner*, 334 N.C. 662, 665, 435 S.E.2d 324, 327 (1993) (quoting *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 366 (1985)).

An action for the negligent infliction of emotional distress may arise from a concern for one's own welfare, or concern for another's. *Id.* No physical impact or injury is necessary in order to pursue this type of action. *Id.* An action for the negligent infliction of emotional distress has three elements: (1) defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) defendant's conduct, in fact, caused plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). The plaintiff must show that the distress suffered was "a proximate and foreseeable result of the defendant's negligence." *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993) (quoting *Ruark*, 327 N.C. at 304, 395 S.E.2d at 97). In *Ruark* and in *Gardner*, the Supreme Court discussed factors to be considered in measuring foreseeability where emotional distress is alleged as a result of one's concern for another's welfare. However, "[t]he factors set out in *Gardner* logically apply only when a plaintiff brings a negligent infliction of emotional distress claim based on concern for the welfare of another." *Chapman v. Byrd*, 124 N.C. App. 13, 21, 475 S.E.2d 734, 740 (1996), *disc. review denied*, 345 N.C. 751, 485 S.E.2d 50 (1997). Thus, these factors are of little assistance in a case such as this one where plaintiff alleges severe emotional distress, not as a result of her concern for others, but as a result of her concern for her own welfare. In her complaint, plaintiff Shipley alleges that "[a]s a direct and proximate result of the negligence by Budd Services, Inc., resulting in the

shootings by Ladislav Antalik and *his attempt to kill Juliette Shipley*, Ms. Shipley suffered severe emotional distress" (emphasis supplied). The complaint does not allege that Shipley suffered severe emotional distress as a result of her concern for others, but for her own welfare as a result of Antilak's attempt on her life.

Thus, the inquiry in the present case must focus on whether Shipley's emotional distress was a foreseeable and proximate result of Budd's negligence. Though the following cases involve damages incurred because of one's concern over another's welfare, the holdings in each case, in whole or in part, are based on the presence or absence of proximate cause and are helpful to our analysis.

In *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 334 N.C. 669, 435 S.E.2d 320 (1993), the parents of a son who died in a car accident sued a bartender who negligently served alcohol to their son for the negligent infliction of emotional distress. The Court considered whether the emotional distress suffered was a proximate and foreseeable result of the bartender's act of negligently serving their son alcohol. The Court found that "the possibility (1) the defendant's negligence in serving alcohol to Travis (2) would combine with Travis' driving while intoxicated (3) to result in a fatal accident (4) which would in turn cause Travis' parents (if he had any) not only to become distraught, but also to suffer 'severe emotional distress,' . . . was a possibility too remote to permit a finding that it was reasonably foreseeable." *Id.* at 674, 435 S.E.2d at 323. We read *Sorrells* as holding that while it might be foreseeable that (1) negligently serving alcohol to an intoxicated person would cause that person to suffer harm should they attempt to drive, (2) that a drunk driver would get in an accident, and (3) that a parent of one in such an accident would suffer emotional distress, the initial and final events in this instance are not so proximately related that the result could have been foreseeable to the bartender.

In *Gardner v. Gardner*, 334 N.C. 662, 435 S.E.2d 324 (1993), the plaintiff mother sued the defendant father for damages for emotional distress arising out of the death of their child due to defendant father's negligent operation of a motor vehicle. The plaintiff mother had rushed to the hospital after the accident only to witness a failed attempt to resuscitate the child. The Court held the emotional distress suffered by the mother after witnessing the failed resuscitation attempt was simply "too remote from the negligent act itself to hold defendant liable for such consequences." *Id.* at 668, 435 S.E.2d at 328.

**ROBBLEE v. BUDD SERVICES, INC.**

[136 N.C. App. 793 (2000)]

Similarly, in this case we hold that the emotional distress suffered by Shipley was not a reasonably foreseeable consequence of any negligent conduct on Budd's part. Viewed in the light most favorable to plaintiff Shipley as the non-moving party, the evidence shows that Budd provided the temporary access card to Antilak, and negligently failed to retrieve this card from Antilak after his employment at Sumitomo terminated, allowing Antilak to gain entry to the factory where he killed two people and injured several others. The evidence permits a reasonable inference that plaintiff Shipley was at least one of Antilak's targets. Though she did not witness the shootings, she was in close proximity, and heard the shots. She suffered severe emotional distress as a result of the shootings.

These facts are sufficient to support a finding that Budd engaged in negligent conduct, and that plaintiff Shipley suffered severe emotional distress. However, these facts do not support an inference that Shipley's emotional distress was a reasonably foreseeable result of Budd's negligent acts; Budd's negligence in failing to retrieve the access card and Shipley's emotional distress are simply too attenuated to support a finding of reasonable foreseeability. There is no evidence that Budd was told, or had any specific notice of the relationship between Shipley and Antilak which would support an inference that Budd could have taken actions to prevent this specific injury to Shipley. The possibility that (1) defendant's negligence in failing to retrieve the temporary access card (2) would combine with Antilak's rage against his former employer (3) to result in a workplace shooting (4) which would cause Shipley to suffer emotional distress, was, like the situation in *Sorrells*, "too remote to permit a finding that it was reasonably foreseeable." *Sorrells* at 674, 435 S.E.2d at 323. Therefore, an essential element of plaintiff's claim is non-existent and summary judgment in favor of Budd must be affirmed.

Affirmed.

Judges LEWIS and WYNN concur.