IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-112

 Filed: 3 September 2019

Henderson County, No. 18 CVS 1052

DELIA NEWMAN, ET UX, Plaintiffs,

 v.

HEATHER STEPP, ET UX, Defendants.

 Appeal by plaintiffs from order entered 9 January 2019 by Judge Gregory

Horne in Henderson County Superior Court. Heard in the Court of Appeals 22 May

2019.

 F.B. Jackson & Associates Law Firm, PLLC, by Frank B. Jackson, for
 plaintiffs-appellants.

 Ball Barden & Cury P.A., by Ervin L. Ball, Jr., and J. Boone Tarlton, for
 defendants-appellees.

 BRYANT, Judge.

 Where plaintiffs properly alleged severe emotional distress to support

foreseeability in their claim of negligent infliction of emotional distress, we reverse

the trial court’s ruling for judgment on the pleadings in favor of defendants and

remand this case for further proceedings.

 Plaintiffs Delia Newman and Jeromy Newman (collectively “plaintiffs”) appeal

from the trial court’s judgment on the pleadings in favor of defendants Heather Stepp

and James Stepp (collectively “defendants”), whose negligence caused the death of

plaintiffs’ two-year-old daughter, “Abby.” Plaintiffs filed their complaint asserting
 NEWMAN V. STEPP

 Opinion of the Court

claims for negligent infliction of emotional distress (“NIED”), intentional infliction of

emotional distress (“IIED”), violation of a safety statute, and loss of consortium.

Defendants filed an answer––denying negligence and wrongdoing––which contained

a motion for judgment on the pleadings pursuant to Rule 12(c) of the Rules of Civil

Procedure.

 According to the complaint, on 26 October 2015, plaintiff Delia Newman

(hereinafter “Delia”) left Abby in the temporary care of defendants at their residence

while she attended class for her Ultrasound Technician degree. Defendants operated

an unlicensed childcare facility at their residence and regularly cared for other

children, including Abby, during the day. At the time of the incident, about 8:00 a.m.

that morning, the kitchen was left unattended with no adult supervision. Abby and

defendants’ minor children were present and had “unfettered access to [a] loaded

shotgun which was lying on the kitchen table.” The loaded 12 gauge shotgun was

owned by defendants, and defendant Heather Stepp had not completed a firearms

safety course. Defendants also had not utilized the safety or trigger guard to prevent

discharge.

 The shotgun was discharged in Abby’s direction by one of defendants’ children,

who was under the age of five. Abby was struck at close range and the shotgun blast

penetrated her chest causing her to bleed profusely. Abby was transported to a

 -2-
 NEWMAN V. STEPP

 Opinion of the Court

nearby hospital, where she was pronounced dead upon arrival due to the chest wound

she sustained.

 Plaintiff Jeromy Newman (hereinafter “Jeromy”) heard about Abby’s shooting

over a CB radio––her injury was dispatched as a “young female child [who] was

critically wounded by the discharge of a shotgun at close range at the babysitter’s

home and that her condition was extremely critical.” Jeromy heard defendants’

address over the radio and proceeded to defendants’ house. While on the way to their

house, Jeromy saw the ambulance that he learned “contain[ed] his daughter who

was still alive at the time” and followed it to the hospital. He observed Abby as she

was removed from the ambulance. When Jeromy inquired about Abby’s condition, he

was told that Abby had died in the ambulance or immediately after arriving at the

hospital. Delia arrived at the hospital shortly after the incident due to the close

proximity of her school to the hospital. Upon arrival, she was informed of Abby’s

death. Delia held Abby’s lifeless body until she was forced to leave the room.

 On 3 December 2018, a hearing was held on defendants’ 12(c) motion in

Henderson County Superior Court before the Honorable Gregory Horne, Judge

presiding. Judge Horne, after reviewing the pleadings and hearing arguments of

counsel, dismissed plaintiffs’ claims with prejudice.1 Plaintiffs timely appeal.

 1The trial court’s memo refers to cases cited in a trial brief by defendant’s counsel, seemingly
in regard to the foreseeability issue, as critical to his decision. However, defendant’s counsel’s trial
brief was not made a part of the record.

 -3-
 NEWMAN V. STEPP

 Opinion of the Court

 _________________________________________________________

 On appeal, plaintiffs contend the trial court erred by entering judgment on the

pleadings in favor of defendants. Plaintiffs appear to only challenge the trial court’s

ruling as to the NIED claim; therefore, the remaining claims are not subjects of this

appeal.

 We consider whether plaintiffs asserted the claim in their complaint with

sufficient specificity to withstand judgment on the pleadings, and review “[the] trial

court’s order granting a motion for judgment on the pleadings de novo.” Erie Ins.

Exch. v. Builders Mut. Ins. Co., 227 N.C. App. 238, 241, 742 S.E.2d 803, 807 (2013).

 “Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all

the material allegations of fact are admitted in the pleadings and only questions of

law remain.” Id. (citation omitted). In considering a motion for judgment on the

pleadings, “[t]he trial court is required to view the facts and permissible inferences

in the light most favorable to the nonmoving party.” Ragsdale v. Kennedy, 286 N.C.

130, 137, 209 S.E.2d 494, 499 (1974). “All well[-]pleaded factual allegations in the

nonmoving party’s pleadings are taken as true and all contravening assertions in the

movant’s pleadings are taken as false.” Id. “When the pleadings do not resolve all

the factual issues, judgment on the pleadings is generally inappropriate.” Id.

 -4-
 NEWMAN V. STEPP

 Opinion of the Court

 In the instant case, plaintiffs alleged severe emotional distress resulting from

Abby’s tragic death and sought recovery of damages for NIED. The dispositive issue

surrounding plaintiffs’ claim for NIED is foreseeability.

 North Carolina has long recognized claims of NIED arising out of concern for

another person. See Bailey v. Long, 172 N.C. 661, 90 S.E. 809 (1916) (holding that

the plaintiff can bring a cause of action for emotional distress after the death of his

wife arising from his concern for another person). To establish a claim for NIED, “a

plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was

reasonably foreseeable that such conduct would cause the plaintiff severe emotional

distress (often referred to as ‘mental anguish’), and (3) the conduct did in fact cause

the plaintiff severe emotional distress.” Johnson v. Ruark Obstetrics & Gynecology

Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). “Further, a plaintiff may

recover for his or her severe emotional distress arising due to concern for another

person, if the plaintiff can prove that he or she has suffered such severe emotional

distress as a proximate and foreseeable result of the defendant’s negligence.” Id.

 Our Supreme Court has stated:

 In making this foreseeability determination, the factors to
 be considered include, but are not limited to: (1) the
 plaintiff’s proximity to the negligent act causing injury to
 the other person, (2) the relationship between the plaintiff
 and the other person, and (3) whether the plaintiff
 personally observed the negligent act.

 -5-
 NEWMAN V. STEPP

 Opinion of the Court

 However, such factors are not mechanistic requirements
 [such that] the absence of which will inevitably defeat a
 claim for negligent infliction of emotional distress. The
 presence or absence of such factors simply is not
 determinative in all cases. Therefore, North Carolina law
 forbids the mechanical application of any arbitrary
 factors—such as a requirement that the plaintiff be within
 a zone of danger created by the defendant or a requirement
 that the plaintiff personally observe the crucial negligent
 act—for purposes of determining foreseeability.

 Rather, the question of reasonable foreseeability under
 North Carolina law must be determined under all the facts
 presented, and should be resolved on a case-by-case basis
 by the trial court and, where appropriate, by a jury.

Sorrells v. M.Y.B. Hosp. Ventures of Asheville, 334 N.C. 669, 672–73, 435 S.E.2d 320,

322 (1993) (internal citations and quotation marks omitted). “[A]bsent reasonable

foreseeability, the defendant will not be liable for the plaintiff’s severe emotional

distress.” Riddle v. Buncombe Cty. Bd. of Educ., __ N.C. App. __, __, 805 S.E.2d 757,

760 (2017).

 Here, plaintiffs asserted factual allegations in their complaint that set forth a

proper claim for NIED showing: 1) defendants engaged in negligent conduct, 2) it was

foreseeable that such conduct would cause severe emotional distress to plaintiffs, and

3) their conduct did in fact cause severe emotional distress. The factual allegations

are as follows:

 32. Defendants failed to unload the firearm prior to laying
 it on the kitchen table, where it was readily available to the
 minor children that had unfettered access to the entire
 home.

 -6-
 NEWMAN V. STEPP

 Opinion of the Court

33. Defendants failed to “check” the firearm to [ensure] it
was unloaded prior to allowing the [p]laintiffs’ child inside
their home.

34. Defendants failed to properly educate their young
children regarding firearms and the dangers involved with
“playing” with said firearm.

35. Defendants failed to [ensure] that they had the proper
training prior to possessing such a firearm.

36. Defendants failed to properly supervise the minor
children that were in their home.

37. That the actions of the [d]efendants were a direct and
proximate cause of the injuries and death of [Abby.]

...

39. It was reasonably foreseeable that the conduct of the
[d]efendants, and the wounding and death of [Abby] would
cause the [p]laintiffs severe emotional distress, including
but not limited to:

 a. Both [p]laintiffs have incurred severe emotional
 distress. The mother [Delia] has incurred such
 severe emotional distress that she has been
 under constant psychiatric care and has been
 placed on numerous strong anti-depressants as
 well as other medications.

 b. The mother has had etched in her memory the
 sight of her lifeless daughter in her arms at
 Mission Hospital.

 c. The mother has convinced herself that she also is
 going to die, because God would not allow her to
 suffer as she has suffered without taking her life
 also.

 -7-
 NEWMAN V. STEPP

 Opinion of the Court

 d. The mother is still unable to deal with the
 possessions of her dead daughter but has kept
 every possession in a safe place.

 e. At times[,] the mother has wished death for
 herself.

 f. The mother has not been able to tend to her usual
 household duties and has stopped her efforts to
 obtain the degree she had sought[.]

 g. There are days the mother has trouble leaving
 her home.

 h. Both [p]laintiffs have lost normal husband and
 wife companionship and consortium.

 i. As a result of all the aforesaid, the mother has
 been rendered disabled for periods of time since
 her daughter’s death.

 Taking these allegations as true, plaintiffs sufficiently stated facts, which set

forth their severe emotional distress as a direct, reasonable, and foreseeable result of

defendants’ negligence, to enable them to proceed with a claim for NIED.

 The relevant facts show that plaintiffs arrived at the hospital within minutes

of the shooting incident and observed Abby wounded by the shotgun blast––Jeromy,

in particular, observed Abby as she arrived at the hospital and was transported from

the ambulance to the hospital. Delia arrived immediately thereafter and held her

fatally wounded two-year-old in her arms for as long as hospital personnel would

allow. Plaintiffs––who, as parents to Abby, experienced the events immediately prior

to and following Abby’s death in the aftermath of her arrival at the hospital––

 -8-
 NEWMAN V. STEPP

 Opinion of the Court

asserted severe emotional distress from the manner in which they suffered the death

of their daughter. The existence of the close parent-child familial relationship, of

which defendants were well aware of, supports foreseeability.

 “Common sense and precedent tell us that a defendant’s negligent act toward

one person may proximately and foreseeably cause emotional distress to another

person and justify his recovering damages, depending upon their relationship and

other factors present in the particular case.” Ruark, 327 N.C. at 300, 395 S.E.2d at

95. Thus, we reject defendants’ erroneous contention that plaintiffs cannot support

a NIED claim because they were not physically present to observe the actual shooting

of Abby, and therefore, their injury was not reasonably foreseeable. See id. at 291,

395 S.E.2d at 89 (“[O]ur law includes no arbitrary requirements to be applied

mechanically to claims for negligent infliction of emotional distress.”).

 Further, granting judgment on the pleadings was inappropriate, especially

where, as here, plaintiffs allege defendants’ negligence was in fact the foreseeable

and proximate cause of plaintiffs’ severe emotional distress. We note that defendants

admitted the following, in relevant part, in their answer: 1) they operated an

unlicensed child care facility, 2) they had young children in their home, 3) defendant

James Stepp owned the shotgun, 4) the loaded shotgun was on the kitchen table, 5)

the shotgun was discharged at their residence, 6) Abby was shot and bled from the

wound caused by the discharge of the shotgun, and 7) Abby died as a result of the

 -9-
 NEWMAN V. STEPP

 Opinion of the Court

shotgun blast. However, allegations regarding whether defendants’ negligence was

in fact the foreseeable and proximate cause of plaintiffs’ injury are proper questions

for the jury to decide. See id. at 292, 395 S.E.2d at 90 (“The difficulty of measuring

damages to the feelings is very great, but the admeasurement is submitted to the jury

in many other instances, . . . and it is better it should be left to them, under the wise

supervision of the presiding judge, with his power to set aside excessive verdicts,

than, on account of such difficulty, to require parties injured in their feelings by the

negligence, the malice or wantonness of others, to go without remedy.” (citation

omitted)).

 Therefore, we conclude that plaintiffs sufficiently alleged a claim for NIED as

the facts as set forth in the complaint support foreseeability. Additionally, since

plaintiffs’ claim for loss of consortium was sufficiently pled and derived from the claim

for NIED, we recommend that on remand the trial court re-evaluate its ruling on the

loss of consortium claim as well. See Nicholson v. Hugh Chatham Mem’l Hosp., Inc.,

300 N.C. 295, 304, 266 S.E.2d 818, 823 (1980) (“[A] spouse may maintain a cause of

action for loss of consortium due to the negligent actions of third parties so long as

that action for loss of consortium is joined with any suit the other spouse may have

instituted to recover for his or her personal injuries.”).

 The dissenting opinion erroneously contends a loss of consortium claim is only

properly brought with a claim under the wrongful death statute and relies on this

 - 10 -
 NEWMAN V. STEPP

 Opinion of the Court

Court’s ruling in Keys v. Duke Univ., 112 N.C. App. 518, 435 S.E.2d 820 (1993). In

Keys, the plaintiff sought to bring an independent claim for loss of consortium and

wrongful death. Id. This Court emphasized that a loss of consortium claim is

derivative in nature and that, where the loss of consortium claim is covered under

the wrongful death statute, the plaintiff could not independently bring a separate

claim for loss of consortium. Thus, it is incorrect to say that a claim of loss of

consortium is only properly asserted under a wrongful death statute. As Nicolson

recognized, an action for loss of consortium based on the negligent act of a third party

may be joined in any suit by a spouse to recover for personal injuries. See Nicholson,

300 N.C. at 304, 266 S.E.2d at 823.

 Accordingly, for the foregoing reasons, we reverse the trial court’s judgment on

the pleadings for defendants and remand this case for further proceedings as to

plaintiffs’ claim for NIED and loss of consortium.2

 REVERSED AND REMANDED.

 Judge ZACHARY concurs with separate opinion.

 Judge TYSON dissents with separate opinion.

 2Although dicta, we note for plaintiffs’ benefit that the trial court’s ruling regarding the IIED
claim appears to be a proper ruling, as plaintiffs failed to plead the IIED claim with specificity.

 - 11 -
 No. COA19-112 – Newman v. Stepp

 ZACHARY, Judge, concurring.

 In the instant case, it is clearly alleged that Defendants’ negligence

proximately caused the shooting death of Plaintiffs’ minor daughter, Abby, and that

Plaintiffs suffered severe emotional distress as a result. The issue before us is

whether it was reasonably foreseeable that Defendants’ actions would cause

Plaintiffs’ severe emotional distress, as they allege in the complaint.

 Plaintiffs did not observe, nor were they in close proximity to, their daughter’s

shooting by another young child at Defendants’ residence. This “militates against

[Defendants] being able to foresee . . . that [Plaintiffs] would subsequently suffer

severe emotional distress” as a result of Defendants’ negligence. Gardner v. Gardner,

334 N.C. 662, 667, 435 S.E.2d 324, 328 (1993).

 Nevertheless, as our Supreme Court has consistently reiterated, the Ruark

factors are neither elements nor “requisites nor exclusive determinants in an

assessment of foreseeability[.]” Id. at 666, 435 S.E.2d at 327; accord Sorrells v. M.Y.B.

Hospitality Ventures of Asheville, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993)

(“[S]uch factors are not mechanistic requirements the absence of which will inevitably

defeat a claim for negligent infliction of emotional distress.”). To the contrary, the

Ruark factors are exactly what they claim to be: factors. In setting forth these factors,

the Ruark Court “focused on some facts that could be particularly relevant in any one

case in determining the foreseeability of harm to the plaintiff.” Gardner, 334 N.C. at
 NEWMAN V. STEPP

 Zachary, J., concurring

666, 435 S.E.2d at 327. But “[t]he presence or absence of such factors simply is not

determinative in all cases.” Sorrells, 334 N.C. at 672, 435 S.E.2d at 322. Under North

Carolina law, questions of reasonable foreseeability “must be determined under all

the facts presented, and should be resolved on a case-by-case basis by the trial court

and, where appropriate, by a jury.” Id. at 673, 435 S.E.2d at 322 (emphasis added)

(quoting Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 305,

395 S.E.2d 85, 98, reh’g denied, 327 N.C. 644, 399 S.E.2d 133 (1990)).

 Viewing all facts and permissible inferences in the light most favorable to

Plaintiffs, as we must do, I believe that the allegations in Plaintiffs’ complaint are

sufficient to withstand Defendants’ motion for judgment on the pleadings. In addition

to those allegations set forth in the majority opinion, Plaintiffs’ complaint also alleges,

inter alia:

 9. At approximately 8:00 a.m. on October 26, 2015, the
 Mother delivered the temporary care of [Abby] to the
 Defendants at their residence . . . [in] Hendersonville,
 North Carolina.

 10. The Defendants were engaged in keeping other people’s
 children during the day at their home . . . for a fee.

 11. Upon information and belief, the Defendants were not
 licensed in child care services[.]

 12. The Defendants themselves had young children who
 roamed in the Stepp home . . . .

 13. A loaded 12 guage [sic] shotgun was left on the kitchen
 table of the Stepp residence . . . .

 2
 NEWMAN V. STEPP

 Zachary, J., concurring

 14. No safety or trigger guard was engaged on the aforesaid
 shotgun.

 15. Upon information and belief, said shotgun was owned
 and possessed by the Defendants on the morning of October
 26, 2015.

 16. The Stepp children had unfettered access to the loaded
 shotgun which was lying on the kitchen table on the
 morning of October 26, 2015.

 17. Upon information and belief, the Defendant Heather
 Stepp had not completed a firearms safety class.

 18. [Abby] had access to the kitchen area of the Stepp home
 on the morning of October 26, 2015.

 ....

 21. No adult was present to observe or supervise the
 children, either the Stepp children or [Abby] on October 26,
 2015 at about 9:00 a.m[.] in the room where the shotgun
 was lying on the kitchen table.

 ....

 23. Both Defendants knew or should have known that the
 loaded shotgun was left on the kitchen table but took no
 action to secure the gun such that it would be unavailable
 to the children, both their own and [Abby].

 In my view, the facts alleged in these paragraphs tend to favor the

foreseeability of Plaintiffs’ severe emotional distress. It is evident that the parties in

this case were not strangers, but were instead well acquainted with one another. Cf.

Sorrells, 334 N.C. at 674, 435 S.E.2d at 323 (“[T]he plaintiffs’ alleged severe emotional

 3
 NEWMAN V. STEPP

 Zachary, J., concurring

distress arising from their concern for their son was a possibility ‘too remote’ to be

reasonably foreseeable. Here, it does not appear that the defendant had any actual

knowledge that the plaintiffs existed.”). Moreover, although not licensed in childcare

services, Defendants “were engaged in keeping other people’s children during the day

at their home . . . for a fee.”

 It is in this context—considering all of the facts presented—that we must

determine whether it was reasonably foreseeable that (1) Defendants’ negligence in

leaving a loaded, safety-off shotgun unattended (2) in a location readily accessible to

a group of young, unsupervised children (3) would result in Abby’s fatal shooting by

another young child present at Defendants’ home, (4) which would, in turn, cause

Plaintiffs to suffer severe emotional distress. Cf. id. (“We conclude as a matter of law

that the possibility (1) the defendant’s negligence in serving alcohol to Travis (2)

would combine with Travis’ driving while intoxicated (3) to result in a fatal accident

(4) which would in turn cause Travis’ parents (if he had any) not only to become

distraught, but also to suffer ‘severe emotional distress’ as defined in Ruark, simply

was a possibility too remote to permit a finding that it was reasonably foreseeable.”);

Robblee v. Budd Servs., Inc., 136 N.C. App. 793, 797, 525 S.E.2d 847, 850 (“Budd’s

negligence in failing to retrieve the access card and Shipley’s emotional distress are

simply too attenuated to support a finding of reasonable foreseeability. There is no

evidence that Budd was told, or had any specific notice of the relationship between

 4
 NEWMAN V. STEPP

 Zachary, J., concurring

Shipley and Antilak which would support an inference that Budd could have taken

actions to prevent this specific injury to Shipley. The possibility that (1) defendant’s

negligence in failing to retrieve the temporary access card (2) would combine with

Antilak’s rage against his former employer (3) to result in a workplace shooting (4)

which would cause Shipley to suffer emotional distress, was, like the situation in

Sorrells, too remote to permit a finding that it was reasonably foreseeable.” (citation

and quotation marks omitted)), disc. review denied, 352 N.C. 676, 545 S.E.2d 228

(2000).

 Candidly, I am concerned by the need for limits on a defendant’s liability under

this tort. See Sorrells, 334 N.C. at 673, 435 S.E.2d at 322 (“[S]ome may fear that such

reliance on reasonable foreseeability, if carried out to its fullest extent, would directly

lead to the recovery of damages for all kinds of mental suffering . . . .” (citation and

quotation marks omitted)). However, “[i]f recovery is limited to instances where it

would be generally viewed as appropriate and not excessive, then, by definition, the

defendant’s liability is commensurate with the damage that the defendant’s conduct

caused.” Ruark, 327 N.C. at 306, 395 S.E.2d at 98.

 Here, Plaintiffs allege that Defendants acted in a negligent manner, that it

was reasonably foreseeable that Defendants’ negligent conduct would cause severe

emotional distress to Plaintiffs, and that Plaintiffs did, in fact, suffer severe

emotional distress as a result. Viewing all facts and permissible inferences in the

 5
 NEWMAN V. STEPP

 Zachary, J., concurring

light most favorable to Plaintiffs, judgment on the pleadings was prematurely

granted in favor of Defendants.

 Accordingly, I concur.

 2
 No. COA19-112 – Newman v. Stepp

 TYSON, Judge, dissenting.

 The shock and anguish suffered by plaintiffs upon learning of the wholly

unexpected death of their young daughter is unfathomable to anyone not

experiencing a similar loss. While nothing can change these facts nor restore the

child plaintiffs have lost, the law affords these parents a claim and remedy of

monetary compensation for damages they suffered through a claim for wrongful

death. N.C. Gen. Stat. § 28A-18-2 (2017); see Bailey v. Gitt, 135 N.C. App. 119, 120,

518 S.E.2d 794, 795 (1999) (“To bring an action under G.S. § 28A-18-2 (the wrongful

death statute), a plaintiff must allege a wrongful act, causation, and damages.

Negligence is a ‘wrongful act’ upon which a wrongful death claim may be

predicated.”).

 Plaintiffs’ complaint and defendants’ answer support the trial court’s

conclusion and its order is properly affirmed. The trial court properly reviewed the

parties’ arguments and authorities they cited, reviewed under Rule 12(c) and not Rule

12(b)(6). In the light most favorable, plaintiffs have not alleged and cannot prove it

was reasonably foreseeable to defendants that plaintiffs would suffer severe

emotional distress based upon defendants’ negligence. Plaintiffs’ allegations do not

and cannot sustain a claim for negligent infliction of emotional distress (“NIED”) to

survive defendants’ motion for judgment on the pleadings.
 NEWMAN V. STEPP

 TYSON, J., dissenting

 As tragic and compelling as the facts are before us, the trial court properly

granted defendants’ motion for judgment on the pleadings. N.C. Gen. Stat. § 1A-1,

Rule 12(c). Plaintiffs failed to carry their burden to show any reversible error on

appeal. I vote to affirm the trial court’s Rule 12(c) dismissal of plaintiffs’ claims. I

respectfully dissent.

 I. Factors of Reasonable Foreseeability

 Nearly thirty years ago, the Supreme Court of North Carolina stated in order

to establish a claim for negligent infliction of emotional distress, “a plaintiff must

allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably

foreseeable that such conduct would cause the plaintiff severe emotional distress . . .,

and (3) the conduct did in fact cause the plaintiff severe emotional distress.” Johnson

v. Ruark Obstetrics, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (emphasis supplied)

(citations omitted).

 “Further, a plaintiff may recover for his or her severe emotional distress

arising due to concern for another person, if the plaintiff can prove that he or she has

suffered such severe emotional distress as a proximate and foreseeable result of the

defendant’s negligence.” Id. (emphasis in original) (citations omitted).

 This Court recently held, “absent reasonable foreseeability, the defendant will

not be liable for the plaintiff’s severe emotional distress.” Riddle v. Buncombe Cty.

Bd. of Educ., ___ NC. App, ___, 805 S.E.2d 757, 760 (2017). Since plaintiffs’ alleged

 2
 NEWMAN V. STEPP

 TYSON, J., dissenting

emotional distress was caused by concern for the well-being of another, the

“reasonable foreseeability” prong typically requires significant allegations, evidence,

and analysis. See id. at ___, 805 S.E.2d at 760-61.

 To properly show and analyze whether a defendant had “reasonable

foreseeability”, our Supreme Court in Johnson set forth and considered three factors

including, but not limited to: “the plaintiff’s proximity to the negligent act, the

relationship between the plaintiff and the other person for whose welfare the plaintiff

is concerned, and whether the plaintiff personally observed the negligent act.”

Johnson, 327 N.C. at 305, 395 S.E.2d at 98.

 Our Supreme Court has stated, “such factors are not mechanistic requirements

[such that] the absence of which will inevitably defeat a claim for negligent infliction

of emotional distress.” Sorrells v. M.Y.B. Hosp. Ventures of Asheville, 334 N.C. 669,

672, 435 S.E.2d 320, 322 (1993). Further, the Court stated, “North Carolina law

forbids the mechanical application of any arbitrary factors.” Id.

 Plaintiffs’ allegations in the complaint, as fully answered by defendants, and

assertions on appeal provide no basis to support any finding of reasonable

foreseeability that defendants’ actions “would cause the plaintiff[s] severe emotional

distress.” Johnson, 327 N.C. at 304, 395 S.E.2d at 97.

 Plaintiffs’ allegations rely solely upon the existence of a parent-child

relationship and the aftermath and effects they suffered from the wrongful death of

 3
 NEWMAN V. STEPP

 TYSON, J., dissenting

their child. The trial court properly concluded these allegations, taken as true, are

insufficient as a matter of law to sustain a claim for NIED.

 A. Proximity and Personal Observation Factors

 Plaintiffs’ complaint does not allege and the majority’s opinion does not explain

how both plaintiffs’ absence from being in close “proximity to the negligent act” when

it occurred or that either “plaintiff personally observed the negligent act” can sustain

an NIED claim. Johnson, 327 N.C. at 305, 395 S.E.2d at 98.

 The negligent act at issue occurred prior to the fateful moment: leaving a

loaded shotgun on the kitchen table, the failure to keep the shotgun from being

available to children, the lack of supervision of the children resulting in unfettered

access to the loaded shotgun. Defendants’ five-year-old child, who pulled the trigger

discharging the weapon, is legally incapable of forming ill intent or culpability for the

act. See N.C. Gen. Stat. § 7B-1501(7) (2017). Neither plaintiff can show either close

proximity to or personal observation of any such negligence, only the wrenching

experiences of its tragic aftermath.

 Plaintiffs argue that a parent need not see either their child’s injury or death

in order to suffer severe emotional pain. That argument is correct, as applied to a

child’s wrongful death, but it cannot solely serve as a basis for further liability under

a separate and distinct NIED claim, as alleged here. This is the reason our Supreme

Court specifically preserved the independent “reasonable foreseeability” allegation

 4
 NEWMAN V. STEPP

 TYSON, J., dissenting

and proof factors to assert an NIED claim in Johnson. See id. at 307, 395 S.E.2d at

99 (Meyer, J., dissenting) (noting that reasonable foreseeability tests for bystander

recovery under NIED “are conscientious efforts to avoid what would otherwise

become a tort-feasor’s unlimited liability to any bystander suffering foreseeable

serious emotional distress.”).

 Plaintiff Jeromy Newman is the father of the deceased child. He alleges he

overheard the 911 call while physically at work over a CB radio, which he carried as

a volunteer firefighter. Upon hearing the nature of the call, plaintiff left work and

headed towards defendants’ home.

 Nothing in the call specifically named his child nor indicated she had been

injured, or that she was the child being transported in the ambulance. He followed

the ambulance to the hospital, where he was told the child had died while in the

ambulance or immediately upon arrival, but before he saw her. This fact is omitted

and misrepresented in the majority’s opinion, which intimates the child was alive and

receiving emergency services after arrival at the hospital.

 At no point in the pleadings does Jeromy assert that he recognized or identified

the child as his daughter until after she had died. In their brief to this Court,

plaintiffs specifically and candidly acknowledge they “were not physically present at

the scene of the incident nor did they observe the incident” and they “did not see their

child alive after the incident, but instead saw her immediately after her death.” The

 5
 NEWMAN V. STEPP

 TYSON, J., dissenting

majority’s opinion elides this fact, and implies Plaintiff knew the child inside the

ambulance was his daughter before he arrived at the hospital. While the distinction

of when Jeromy learned the fatally injured child was, in fact, his daughter is deeply

relevant to the emotional trauma he suffered in that moment for a wrongful death

claim, it is wholly irrelevant to the determination of “reasonable foreseeability” to

support a valid NIED claim to survive judgment on the pleadings.

 In the similarly tragic case of Gardner v. Gardner, our Supreme Court stated:

“That plaintiff suffered severe emotional distress upon seeing her son in the

emergency room undergoing resuscitative efforts a period of time after the accident,

and upon learning subsequently of his death, is stipulated. Nevertheless, absent

reasonable foreseeability, this is not an injury for which defendant is legally

accountable.” Gardner v. Gardner, 334 N.C. 662, 667, 435 S.E.2d 324, 328 (1993). The

Supreme Court decided Gardner three years after that Court’s decision in Johnson.

 While plaintiffs unquestionably suffered a grievous sense of emotional

suffering and loss from the wrongful death of their child, neither of the plaintiffs

witnessed the negligent act, were physically present at the scene of the child’s

injuries, nor did either parent personally observe any suffering by or the death of

their child to support a viable claim of NIED. Id.

 B. Relationship Factor

 6
 NEWMAN V. STEPP

 TYSON, J., dissenting

 Even though the relationship between a young child and her parents is

obvious, the parent-child relationship, standing alone, is not per se proof of satisfying

the second prong in Johnson. See id.; see also Hickman v. McKoin, 337 N.C. 460, 463-

64, 446 S.E.2d 80, 83 (1994). The court in Gardner suggested an additional

consideration: whether the defendant would have reasonable foreseeability or any

reason to know that the plaintiff shared a close or familial relationship with the

victim or that the plaintiff was susceptible to severe emotional distress brought about

by the defendant’s negligent actions. Gardner, 334 N.C. at 667-68, 435 S.E.2d at 328.

The defendant’s knowledge, or lack thereof, of the plaintiff’s susceptibility has been

applied to the facts in several cases since.

 In Gardner, a child was riding inside his father’s vehicle when the father

crashed the vehicle. Gardner, 334 N.C. at 663-64, 435 S.E.2d at 326. The child’s

mother raced to the hospital upon hearing the news of the injury, only to witness a

failed attempt to resuscitate the child. Id. at 664, 435 S.E. 2d at 326. The mother

sued the father for damages resulting from his negligent conduct that caused her

emotional distress over the well-being of another. Id.

 Our Supreme Court held that the mother had failed to meet the first and third

factors of the Johnson guidelines because, as both plaintiffs admitted here, she did

not witness the accident, nor was she in close proximity to it. Id. at 667, 435 S.E. 2d

at 328. Her emotional distress claim was held to be “too remote from the negligent

 7
 NEWMAN V. STEPP

 TYSON, J., dissenting

act itself to hold [the] defendant liable for such consequences.” Id. at 668, 435 S.E.2d

at 328. The Supreme Court reversed this Court’s decision and remanded for the trial

court to reinstate an order of summary judgment for defendant on plaintiff’s claim

for NIED. Id.

 In Riddle, the plaintiff alleged defendants’ negligent actions leading to the

death of a third person legally and foreseeably caused his severe emotional distress,

where he was physically present and witnessed the death, and that the defendants’

actions had combined such that they were jointly and severally liable under NIED for

his injuries. Riddle v. Buncombe Cty. Bd. of Educ., ___ NC. App. ___, ___, 805 S.E.2d

757, 759 (2017). The defendants denied negligence and also filed a motion to dismiss

for failure to state a claim under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Id. The trial

court granted the motion to dismiss for failure to state a claim. Id. at ___, 805 S.E.2d

at 759-60.

 On appeal, the plaintiff argued that the trial court erred by granting the

motion to dismiss because he had sufficiently alleged NIED arising from concern for

both himself and his brain-injured teammate and friend. Id. at ___, 805 S.E.2d at 760.

 The only part of the plaintiff’s claim in Riddle arising from concern for himself

was his narrowly escaping being hit by a John Deere field vehicle, an allegation of

temporary fright. Id. at ___, 805 S.E.2d at 761. However, allegations of “temporary

fright” are also insufficient to satisfy the element of severe emotional distress. Id.; see

 8
 NEWMAN V. STEPP

 TYSON, J., dissenting

also Johnson, 327 N.C. at 303-04, 395 S.E.2d at 97 (mere temporary fright,

disappointment or regret will not suffice to allege that severe emotional distress was

the foreseeable and proximate result of such negligence). Temporary fear, such as

hearing a call and riding behind an ambulance with an unidentified patient, is

insufficient to sustain an NIED claim. Id.

 Further, the plaintiff in Riddle cited no other cases allowing a bystander claim

involving death to a third party, in which the relationship between the plaintiff and

the person for whom he was afraid was merely a friend and teammate. Id. Nothing

suggested how close their friendship was; simply being nearby and observing the

victim getting killed was not enough. Id. at ___, 805 S.E.2d at 762. The Rule 12(b)(6)

dismissal was affirmed. Id.

 In another post-Johnson precedent, this Court in Fields v. Dery affirmed the

trial court’s granting defendant’s motion to dismiss for failure to state a claim under

N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Fields v. Dery, 131 N.C. App. 525, 509 S.E.2d

790 (1998). The narrative in this case, as in the present case, also asserted very

compelling and egregious facts. The plaintiff filed suit for NIED, alleging “plaintiff

was driving behind her mother’s car, she witnessed the collision, and she was first

person [sic] to reach her mother’s side.” Id. at 527, 509 S.E.2d at 791 (1998).

 This Court concluded plaintiff had failed to allege or show reasonable

foreseeability because the complaint contained “no ‘allegation[s] nor forecast of

 9
 NEWMAN V. STEPP

 TYSON, J., dissenting

evidence’ that defendant had knowledge of plaintiff's relationship to the decedent, nor

that defendant knew plaintiff was subject to suffering severe emotional distress as a

result of defendant's conduct.” Id. at 529, 509 S.E.2d at 792. This Court relied upon

our Supreme Court’s holding in Andersen v. Baccus, 335 N.C. 526, 439 S.E.2d 136

(1994). Id.; see also Butz v. Holder, 113 N.C. App. 156, 159, 437 S.E.2d 672, 674 (1993)

(no allegation nor forecast of evidence that defendant knew plaintiff was subject to

an emotional or mental disorder or other severe and disabling emotional or mental

condition as a result of his negligence).

 In Andersen, another case with horrific facts, the plaintiff’s complaint alleged

claims for wrongful death, NIED, and punitive damages after his near-term,

pregnant wife was involved in a severe automobile accident. Andersen, 335 N.C. at

527-28, 439 S.E.2d at 137. The plaintiff did not witness the accident but arrived upon

the accident scene prior to his wife’s removal and rescue from the vehicle’s wreckage

and her subsequent transport to the local hospital. Andersen, 335 N.C. at 527, 439

S.E.2d at 137. The next day, the plaintiff’s wife gave birth to a still-born baby and

later died herself from injuries she had sustained in the accident. Id.

 Despite the plaintiff’s extreme suffering and distress dealing with the after-

effect of both his wife’s and child’s wrongful deaths, the court granted defendant’s

motion for summary judgment on NIED, and held that plaintiff's severe emotional

 10
 NEWMAN V. STEPP

 TYSON, J., dissenting

distress was not reasonably foreseeable. Id. at 533, 439 S.E.2d at 140. The court

reasoned:

 Both Gardner and Sorrells teach that the family
 relationship between plaintiff and the injured party for
 whom plaintiff is concerned is insufficient, standing alone,
 to establish the element of foreseeability. In this case as in
 Sorrells the possibility that the decedent might have a
 parent or spouse who might live close enough to be brought
 to the scene of the accident and might be susceptible to
 suffering a severe emotional or mental disorder as the
 result of [defendant's] alleged negligent act is entirely too
 speculative to be reasonably foreseeable.

Id.

 The majority’s and the concurring opinion makes no effort to analyze,

distinguish, or reconcile these post-Johnson precedents with their decision to

reverse. The reason for their failure to do so is that they cannot.

 C. Implementation of the Factors

 Before adoption of the three “reasonable foreseeability” considerations of

proximity, personal observation of the event, and relationship to the injured party

provided in Johnson, under prior law a plaintiff was required to prove: (1) the

defendant’s negligence caused emotional distress by physical impact or injury; or (2)

the defendant’s negligence caused extreme emotional distress followed by physical

manifestations. Donna L. Shumate, Tort Law: The Negligent Infliction of Emotional

Distress - Reopening Pandora’s Box - Johnson v. Ruark Obstetrics, 14 Campbell L.

Rev. 247, 248 (1992); see, e.g., King v. Higgins, 272 N.C. 267, 158 S.E.2d 67 (1967)

 11
 NEWMAN V. STEPP

 TYSON, J., dissenting

(permitting recovery for emotional distress accompanying plaintiff’s physical injuries

in an auto collision); Britt v. Carolina N. R.R., 148 N.C. 37, 61 S.E. 601 (1908) (holding

mental suffering to be a proper element of damages where train severed plaintiff's

leg); Watkins v. Kaolin Mfg. Co., 131 N.C. 536, 42 S.E. 983 (1902) (allowing recovery

for emotional distress caused by blasting damage to plaintiff’s property followed by

physical manifestations including sleeplessness and loss of attention).

 Additionally under prior law, in order for a “bystander” plaintiff to recover in

a claim for NIED for injuries or death to a third party, the plaintiff had to show: (1)

he was within the “zone of danger”; and, (2) “suffered a subsequent manifestation of

the emotional distress.” Shumate, Tort Law: The Negligent Infliction of Emotional

Distress - Reopening Pandora’s Box - Johnson v. Ruark Obstetrics, 14 Campbell L.

Rev. at 248.

 Over time, several other states began to abandon the “zone of danger” and

“impact” requirements, instead adopting a “foreseeable plaintiff” test or adopting a

version of California’s broad, factorial “Dillon test.” Johnson, 327 N.C. at 289, 395

S.E.2d at 89. In Johnson, our Supreme Court concluded over sharp dissents; that a

plaintiff need not allege or prove physical impact, injury, or manifestation of

emotional distress in order to establish severe emotional distress as a foreseeable and

proximate result of the defendant’s negligence to recover on a claim for NIED. Id. at

304, 395 S.E.2d at 97.

 12
 NEWMAN V. STEPP

 TYSON, J., dissenting

 Instead, the Supreme Court adopted the factors of proximity, personal

observation of the event, and relationship to the injured party to analyze questions

of foreseeability “under all the facts presented, and should be resolved on a case-by-

case basis by the trial court and, where appropriate, by a jury.” Id. at 305, 395 S.E.2d

at 98.

 As the majority’s opinion notes, the above “guidelines” in Johnson are factors

to consider and the “law includes no arbitrary requirements to be applied

mechanically.” Id. at 291, 395 S.E.2d at 89. Even so, and as shown above, North

Carolina trial courts, this Court, and our Supreme Court have consistently applied

these factors to NIED claims and decisions since Johnson. See id. Given the horrific

facts before us, the majority’s opinion does not and cannot reconcile these precedents

applying Johnson with its holding here. The majority’s opinion also does not

acknowledge the challenge and consequences addressed in Johnson of imposing

unlimited liability for unforeseen acts on unaware and attenuated defendants.

 The Court in Johnson “noted that, ‘[a]s the courts have faced new and more

compelling fact patterns, the tests have progressed in a linear fashion towards

allowing greater degrees of recovery.” Id. at 290, 395 S.E.2d at 89 (citation omitted).

California itself “has found it necessary to strictly construe the Dillon requirements

and has in fact begun a retreat from the broad rule set out in Dillon.” Id. at 308-09,

395 S.E.2d at 100 (Meyer, J., dissenting) (citing Thing v. La Chusa, 771 P.2d 814

 13
 NEWMAN V. STEPP

 TYSON, J., dissenting

(1989) for the “difficulties encountered after Dillon” and “establishing strict

requirements of physical presence, contemporaneous awareness that the event is

causing injury, and close consanguine or marital relationship to the primary victim.”).

 The majority’s opinion fails to acknowledge that other jurisdictions have found

the consideration and application of these Dillon/Johnson factors to be ineffective in

providing or reserving any real limits on foreseeability and liability.

 The concurring opinion expressly admits, “[c]andidly, I am concerned by the

need for limits on a defendant’s liability under this tort. See Sorrells, 334 N.C. at 673,

435 S.E.2d at 322 (“[S]ome may fear that such reliance on reasonable foreseeability,

if carried out to its fullest extent, would directly lead to the recovery of damages for

all kinds of mental suffering[.]” (citation and quotation marks omitted)).” (Zachary J,

concurring).

 By disregarding or treating the three thresholds narrowly, rather than as

factors of foreseeability, a plaintiff is allowed multiple “bites at the apple” to multiple

unrelated acts and defendants to show that the plaintiff’s emotional distress was

“reasonably foreseeable” from the defendant’s attenuated negligent act, without

being physically present when the negligence occurred, without showing the

relationship of the parties, and without witnessing the injury or death that results.

 Without requiring plaintiffs to allege and satisfy the three factors of reasonable

foreseeability, the majority’s opinion broadens the scope and class of defendants for

 14
 NEWMAN V. STEPP

 TYSON, J., dissenting

liability and, as was warned in Johnson, has “reopened the Pandora’s box of unlimited

liability problems that one hundred years of case law had successfully closed.”

Shumate, Tort Law: The Negligent Infliction of Emotional Distress - Reopening

Pandora’s Box - Johnson v. Ruark Obstetrics, 14 Campbell L. Rev. at 260.

 Also, the majority’s reasoning disregards the teaching of one of the most quoted

and basic tort cases addressing foreseeability that every law student learns. Palsgraf

v. Long Island R.R. Co, 162 N.E. 99 (1928). (The question before the court was

whether defendant could be held liable for negligence for actions that cannot be

reasonably foreseen? No. The court held that under the foreseeability test, it was not

reasonable to hold that the railroad's alleged negligence was the cause of the

passenger’s injuries. It concluded that a duty of care must be ascertained from the

risk that can be reasonably foreseen. Long Island Railroad Company could not have

reasonably foreseen that the package contained explosives and posed a threat to

anyone. It was the explosion that was the proximate cause of the injury, and the

railroad could not have reasonably expected such a disaster.) The order appealed

from is properly affirmed.

 II. Loss of Consortium

 The majority’s opinion also erroneously directs the trial court to “re-evaluate

its ruling on the loss of consortium claim.” The concurring opinion does not address

 15
 NEWMAN V. STEPP

 TYSON, J., dissenting

this issue at all. This purported “loss of consortium claim” is not even before us on

appeal.

 When a claim for loss of consortium is asserted as damages resulting from a

death, it is properly brought only as an ancillary claim under the wrongful death

statute. Keys v. Duke University, 112 N.C. App. 518, 520, 435 S.E.2d 820, 821 (1993).

The plaintiff in Keys brought both a wrongful death claim and a loss of consortium

claim following the death of her husband. Id. at 519, 435 S.E.2d at 821. The plaintiff

appealed the dismissal of her loss of consortium claim. Id.

 This Court concluded “that any common law claim which is now encompassed

by the wrongful death statute must be asserted under that statute . . . loss of

consortium is a common law claim.” Id. at 520, 435 S.E.2d at 821 (citations and

internal quotation marks omitted).

 This Court further concluded that

 by the plain language of the wrongful death statute, and in
 light of the statement made by our Supreme Court in
 Nicholson, supra, the North Carolina wrongful death
 statute encompasses a claim for loss of consortium, and we
 hold, therefore, that plaintiff’s claim in the present action
 should have been brought under that statute.

Id. at 522, 435 S.E.2d at 822.

 Since plaintiffs’ action for wrongful death is not before us on appeal, this Court

cannot consider a stand-alone claim for loss of consortium as a result of a wrongful

death. Id.

 16
 NEWMAN V. STEPP

 TYSON, J., dissenting

 Our Supreme Court has also expressly limited claims and recovery for

damages for loss of consortium to injuries to married individuals:

 If a loss of consortium is seen not only as a loss of service
 but as a loss of legal sexual intercourse and general
 companionship, society and affection as well, by definition
 any damage to consortium is limited to the legal marital
 partner of the injured. Strangers to the marriage
 partnership cannot maintain such an action, and there is
 no need to worry about extension of proximate causation to
 parties far removed from the injury.

Nicholson v. Hugh Chatham Mem’l Hosp., Inc., 300 N.C. 295, 303, 266 S.E.2d 818,

822-23 (1980) (emphasis supplied).

 This holding was reaffirmed by our Supreme Court nine years later, when a

party sought to expand the claim for loss of consortium to the parent-child

relationship: “a child’s claim for loss of parental consortium against one who is alleged

to have negligently injured the parent ought not to be recognized.” Vaughn v.

Clarkson, 324 N.C. 108, 111, 376 S.E.2d 236, 238 (1989).

 In the same analysis, a parent’s claim for loss of consortium between married

partners due to the wrongful death or loss of a child is not recognized under our

precedents or statutes. See id.; see also Edwards v. Edwards, 43 N.C. App. 296, 302,

259 S.E.2d 11, 15 (1979) (“the relation of parent and child supports no legal right

similar to that of consortium”), Laughter v. Aventis Pasteur, Inc., 291 F. Supp. 2d 406,

413 (M.D.N.C. 2003) (interpreting North Carolina law as not recognizing purported

claims of loss of consortium based on the death of children).

 17
 NEWMAN V. STEPP

 TYSON, J., dissenting

 III. Conclusion

 Without proof of the three factors of reasonable foreseeability set out in

Johnson and applied in all cases since to support an independent tort, considering

the horrific facts in this case, we are left with a claim solely based upon the

undeniable aftermath and consequences of defendants’ alleged negligence in the

wrongful death of the plaintiffs’ child.

 These consequences and sufferings are the same any surviving parent must

bear as the after-the-fact loss and reality arising from the tortious conduct of wrongful

death, but not as a separate independent tort for NIED without allegations and a

showing of the three required foreseeability factors in Johnson. See id.

 Plaintiffs specifically and candidly acknowledge they “were not physically

present at the scene of the incident nor did they observe the incident” and they “did

not see their child alive after the incident, but instead saw her immediately after her

death.” Even considering the allegations and showing of shock, untimely death, and

loss suffered to these facts, as well as those similar facts and consequences present

in Gardner, Sorrells, Riddle, Fields, and Andersen, plaintiffs failed to allege or show

any facts to support Johnson’s first or third foreseeability prongs, or to allege more

than a parent-child relationship under its second prong, to survive defendant’s Rule

12(c) motion for dismissal.

 18
 NEWMAN V. STEPP

 TYSON, J., dissenting

 Reviewed in the light most favorable to them, plaintiffs’ allegations and

defendants’ answer, arguments, and all authorities show the parents’ loss and

anguish suffered in the aftermath and struggles to survive the consequences all result

from their child’s wrongful death, and not from a separate tort of NIED.

 I close with where I started: The shock and anguish suffered by plaintiffs upon

learning of the wholly unexpected death of their young daughter is unfathomable to

anyone not experiencing a similar loss. Unchallenged precedents and statutes compel

me to vote to affirm the trial court’s Rule 12(c) order dismissing the NIED claim. I

respectfully dissent.

 19