ELIZABETH CHAPPELL v. MILTON ELLIS et al.

(Decided December 6, 1898).

## *Damages, Compensatory and Punitive—Mental Anguish.*

The doctrine of "Mental Anguish" is not applicable to the question of damages for wrongful seizure of property; where such act is attended with circumstances of aggravation, punitive damages may be awarded.

CIVIL ACTION for damages for the wrongful seizure of the personal property of plaintiff under process against her husband, tried before *McIver, J.*, at Fall Term, 1897, of the Superior Court of IREDELL County.

The complaint alleged that by the wrongful act of Deputy Sheriff Thorpe, and Ellis, she has suffered greatly in body and mind to her damage $500.

The articles taken were two shotes, one yearling, 25 or 30 bushels of corn, and something less than eight bushels of peas. About a week after that, they returned to her 19 bushels of corn, the yearling, some peas, and one shote.

The jury found all issues in favor of plaintiff and assessed her damages at $100.

During the trial, S. A. Reavis, one of the plaintiff's witnesses, was asked:

*Q.* What was the condition of plaintiff next day? Objected to by defendant. Objection over-ruled, and defendants excepted.

*A.* She was crying and going on considerably; seemed to be in a great deal of trouble, and was in trouble for weeks afterwards.

Judgment was rendered in accordance with the verdict. Appeal by defendants.

Mr. B. F. Long, for defendants (appellants).
Messrs. Armfield & Turner, for plaintiff.

DOUGLAS, J.: This is an action to recover damages for the unlawful seizure and detention of personal property, and also for mental suffering caused thereby. The plaintiff alleges that a writ of possession was issued in favor of the defendant Ellis against her husband and herself, and also directing the Sheriff to make the sum of $197.00 with interests and costs out of her said husband; that her said husband had not been living with her for 2 years, having abandoned her and removed to the State of Indiana; that the defendant Thorpe, Deputy Sheriff, in obedience to said writ removed her from the premises; and also, under the direction of the defendant Ellis, levied upon the following personal property belonging to her, to-wit, "About 35 bushels of corn, 5 bushels of peas, 1 yearling calf and 2 shotes, and delivered the same to the defendant Ellis against the will and over the protest of the plaintiff, she at the time informing Thorpe that she was the sole owner of said property; that the said Ellis took the said property to his home and kept it for more than a week, when he returned a part of the corn and peas, the yearling and one shote; and that the property not returned was reasonably worth $20." She further alleges "That she is old and infirm, having reached the age of 64 years, and has to depend upon her own labor and exertion for a support; and after the removal of the said property by Thorpe and Ellis, she had nothing upon which to live and no home to shelter her body; that by the wrongful act of Thorpe and Ellis in taking from her the said property, contrary to the writ aforesaid and without authority in law, and depriving her of the only means

CHAPPELL v ELLIS.

of support she then had in her advanced age in life, she has suffered greatly in body and mind, to her damage $500."

It is unnecessary to consider the answers or the general testimony, as the jury evidently believed the plaintiff, as they found every issue in her favor. We see no error in the charge of the court of which the defendants can complain, as it appears from the record that every instruction asked by them was given. Therefore, their third assignment of error, "For that his Honor failed to instruct the jury as prayed by defendant in the prayers numbered 1 to 9 inclusive, and failed, except the 8th, given," can not be considered by us. The record states that "the defendants asked the following special instructions in writing, *which were given by the court.*" Then follow immediately eight numbered prayers, one or two of which it would be difficult to sustain under exception by the plaintiff.

But there is one exception by the defendants which we think must be sustained, and that is to the testimony of the plaintiff's witness Reavis. He was asked, "What was the condition of the plaintiff next day?" and answered, "She was crying and going on considerably; seemed to be in great deal of trouble, and was in trouble for weeks afterwards." As this testimony tended to show mental suffering, and as it is evident that the greater part of the damages awarded was based upon such suffering alone, the exception becomes of vital importance. The doctrine of mental suffering or "mental anguish," as we prefer to call it, as indicating a higher degree of suffering than arises from mere disappointment or annoyance, contemplates purely compensatory damages, and, as far as we are aware, has never been applied to cases like that at bar. This case would come

under the Rule of exemplary, punitive or vindictive
damages, as they are variously denominated. Such
damages, which look not only to the loss sustained by
the plaintiff, but still more to the conduct of the defend-
ants, can be allowed only where there is shown, on the
part of the defendants, malice, wantonness, oppression,
brutality, insult, gross negligence, or certain cases of
fraud. Hale on Damages, Sections 85 and 86; 1 Sedg-
wick Damages, 520; 7 Am. & Eng. Enc., 450, 451;
*Duncan* v. *Stalcup,* 18 N. C., 440; *Gilreath* v. *Allen,*
32 N. C., 67; *Hansley* v. *Railroad,* 117 N. C , 565.
These matters of aggravation need not all concur, as any
one will be sufficient if it exists in sufficient degree; but,
in the absence of them all, exemplary damages cannot
be allowed, no matter how great may be the mental suf-
fering of the plaintiff. The question of exemplary dam-
ages does not appear to have been raised in the trial of
the action, as no such issue of instruction was asked by
either party. The theory of the plaintiff was the recov-
ery of compensatory damages for mental anguish under
the rule laid down in *Young* v. *Tel. Co.,* 107 N. C., 370,
and analagous cases. This rule cannot be extended to
the case at bar. The plaintiff is entitled to recover all
her actual damages sustained from the wrongful act of
the defendants, including not only the value of the
property not returned, but also whatever damages may
have accrued from its seizure and detention. Further-
more she may be allowed exemplary damages, in the
discretion of the jury, if such circumstances of aggrava-
tion are shown as would bring her within the rule; but
her case does not come within the doctrine of "mental
anguish." It is true the two doctrines are somewhat
similar inasmuch as they recognize suffering other than
physical or pecuniary, but they are so widely distin-

guished in their application that they are universally recognized as distinct principles, wherever they are recognized at all.

It is urged on behalf of the plaintiff that this case should be governed by the principles laid down in *Cashion* v. *Tel. Co.*, at this Term. We see no resemblance. Our opinion in Cashion's case was hinged on the solemn fact of death and the associations inseparable from the final severance of all earthly ties by an immortal Spirit. The anguish of a mother bending over the body of her child, every lock of whose sunny hair is entwined with a heart string, and kissing the cold lips that are closed forever, cannot come within the range of comparison with any mental suffering caused by the loss of a pig.

We are not insensible to the pitiable condition of the plaintiff, thrown upon the highway without shelter and with but little to eat, but we must remember that her shelterless condition, which probably caused the greater part of her distress, was the result of a lawful eviction. Charity would have dictated a different course, but that great virtue is not enforcible in a court of law.

But it is urged that the principle of the Cashion case, if carried out to its fullest extent, would directly lead to the recovery of damages for all kinds of mental suffering. It may be, but we feel compelled to carry out a principle only to its necessary and logical results, and not to its furthest theoretical limit, in disregard of other essential principles.

The one universal law of nature is that all action, animate as well as inanimate, is the result of conflicting forces. The orbit of the earth depends upon the exquisite adjustment of two conflicting forces, the centripetal power of attraction and the centrifugal force of momentum. The preponderance of either would lead

to inevitable destruction.   The trajectory of  every shot is governed by three  opposing forces, momentum, friction and gravitation—the speed with which it leaves the gun, the resistance of the atmosphere and the attraction of the earth.   It is so with human action.   Government itself is recognized as springing from the love of personal liberty on the one hand and the  desire for personal protection on  the other.   It is said that their just equilibrium produces a government of liberty without license and of law without tyranny, but that its disturbance would lead to anarchy or to despotism.

We do not feel at liberty to adopt any one  principle as the sole guide of  our decisions and  to carry it out to extreme and dangerous limits, regardless of other great principles, of justice and of law, so firmly  established by reason and precedent.

For the error of his Honor in admitting evidence which tended simply to show the mental suffering of the plaintiff, disconnected with any allegation of malice or wantonness on the part of the defendants, a new trial must be granted.

New trial.