LINDA SORRELLS AND HUSBAND, RONALD E. SORRELLS v. M.Y.B. HOSPITALITY VENTURES OF ASHEVILLE, D/B/A RHAPSODY'S FOOD AND SPIRITS

No. 61A93

(Filed 8 October 1993)

**Intoxicating Liquor § 43 (NCI4th); Negligence § 19 (NCI4th) — alcohol served to intoxicated patron—patron killed in one car accident—emotional distress to patron's parents—foreseeability**

The trial court did not err by dismissing an action for negligent infliction of emotional distress under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiffs alleged that they were the parents

**Am Jur 2d, Intoxicating Liquors § 265; Negligence § 488 et seq.**

Justice MEYER concurring in the result.

Appeal as of right pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 108 N.C. App. 668, 424 S.E.2d 676 (1993), reversing an order entered by John, J., in Superior Court, Haywood County, on 5 July 1991. Heard in the Supreme Court on 16 September 1993.

*McLean & Dickson, P.A., by Russell L. McLean, III, for plaintiffs-appellees.*

*Harrell & Leake, by Larry Leake, for defendant-appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Richard L. Pinto, on behalf of the North Carolina Association of Defense Attorneys, amicus curiae.*

MITCHELL, Justice.

The issue before us in this case is whether it was reasonably foreseeable that the plaintiffs would suffer severe emotional distress upon learning that their son had been killed in a one-car accident after he was negligently served alcohol at the defendant's place of business. We hold that it was not reasonably foreseeable; therefore, we reverse the decision of the Court of Appeals.

As this case was dismissed prior to trial pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), we must treat the allegations of the complaint

as true. *See Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A.*, 327 N.C. 283, 286, 395 S.E.2d 85, 87 (1990); *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). The plaintiffs' complaint alleges that they were the parents of Travis Cain Sorrells (hereinafter "Travis"), a 21-year-old community college student. On or about the evening of 21 May 1990, Travis was drinking alcohol with friends at Rhapsody's Food and Spirits, the defendant's place of business. Other members of Travis' party asked their waitress not to serve Travis any more drinks because he "had had enough to drink" and would be driving himself home. Nevertheless, other Rhapsody's employees continued to serve Travis alcohol knowing he was highly intoxicated. As Travis was driving home from Rhapsody's he lost control of his car, struck a bridge abutment and was killed.

The complaint further alleges that when the plaintiffs learned that their son had been killed in a car accident and "his body mutilated," the information "had a devastating emotional effect" on them. As a result, they "suffered . . . sickness, helplessness [and] frailty and . . . under[went] much grief, worry, loss of enjoyment of life, a wrecked nervous system, depression and emotional grief."

The defendant moved to dismiss this action for negligent infliction of emotional distress on the ground that the complaint failed to state a claim upon which relief could be granted. *See* N.C.G.S. § 1A-1, Rule 12(b)(6) (1990). After a hearing, the trial court entered an order granting the defendant's motion and dismissing the action.

The Court of Appeals held that the question of foreseeability in the case at bar was one for the jury and the trial court had therefore erred in dismissing the plaintiffs' claim. *Sorrells v. M.Y.B. Hospitality Ventures*, 108 N.C. App. 668, 672, 424 S.E.2d 676, 679-80 (1993). Therefore, the Court of Appeals reversed the trial court's order.

This Court has recognized claims for negligent infliction of emotional distress for more than one hundred years. *Johnson v. Ruark Obstetrics*, 327 N.C. at 290, 395 S.E.2d at 89. *See generally* Robert G. Byrd, *Recovery for Mental Anguish in North Carolina*, 58 N.C. L. Rev. 435 (1980). In *Johnson v. Ruark Obstetrics* we briefly reviewed the various mechanical and arbitrary "tests" applied to claims for negligent infliction of emotional distress in other jurisdictions. *Ruark*, 327 N.C. at 288-90, 395 S.E.2d at 88-89. We

SORRELLS v. M.Y.B. HOSPITALITY VENTURES OF ASHEVILLE

[334 N.C. 669 (1993)]

expressly refused, however, to adopt any of those mechanical tests and emphasized that claims for emotional distress filed in our courts "must, of course, be decided under North Carolina law." *Id.* at 290, 395 S.E.2d at 89. We surveyed the decisions of this Court applying North Carolina law and expressly held that "our law includes *no* arbitrary requirements to be applied mechanically to claims for negligent infliction of emotional distress." *Id.* at 291, 395 S.E.2d at 89 (emphasis added).

To state a claim for negligent infliction of emotional distress under North Carolina law, the plaintiff need only allege that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Id.* at 304, 395 S.E.2d at 97. In *Ruark* we emphasized that "mere temporary fright, disappointment or regret will not suffice." *Id.* Rather, to establish "severe emotional distress" as defined in *Ruark*, the plaintiff must show an "emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.*

Where, as in the case at bar, the plaintiff is seeking to recover for his or her severe emotional distress arising from an injury to another, the plaintiff may recover "*if* . . . [he or she] can prove that he or she has suffered such severe emotional distress as a proximate and *foreseeable* result of the defendant's negligence." *Id.* (emphasis in original). In making this foreseeability determination, the "factors to be considered" include, *but are not limited to*: (1) "the plaintiff's proximity to the negligent act" causing injury to the other person, (2) "the relationship between the plaintiff and the other person," and (3) "whether the plaintiff personally observed the negligent act." *Id.* at 305, 395 S.E.2d at 98. However, such factors *are not* mechanistic *requirements* the absence of which will inevitably defeat a claim for negligent infliction of emotional distress. *See generally Gardner v. Gardner*, 334 N.C. 662, --- S.E.2d --- (1993). The presence or absence of such factors simply is not determinative in all cases. *Id.* Therefore, North Carolina law forbids the mechanical application of any arbitrary factors—such as a requirement that the plaintiff be within a "zone of danger" created by the defendant or a requirement that the plaintiff personally observe the crucial negligent act—for purposes of determining

foreseeability. Rather, the question of reasonable foreseeability under North Carolina law "must be determined under all the facts presented, and should be resolved on a case-by-case basis by the trial court and, where appropriate, by a jury." *Ruark*, 327 N.C. at 305, 395 S.E.2d at 98. While some may fear that such reliance on reasonable foreseeability, "if carried out to its fullest extent, would directly lead to the recovery of damages for all kinds of mental suffering," this Court long ago concluded in emotional distress cases that we are "compelled to carry out a principle *only* to its necessary and logical results, and not to its furthest theoretical limit, in disregard of other essential principles." *Chappell v. Ellis*, 123 N.C. 259, 263, 31 S.E. 709, 711 (1898) (emphasis added), *quoted with approval in Ruark*, 327 N.C. at 306, 395 S.E.2d at 98.

As this case hinges on the issue of reasonable foreseeability, it is useful and instructive to note other cases—in addition to *Ruark*—in which this Court has considered the foreseeability of a plaintiff's emotional distress arising from his or her concern for another. One such case is *Bailey v. Long*, 172 N.C. 661, 90 S.E. 809 (1916), in which the plaintiff's wife died due to the negligence of the defendant physician and his hospital. The plaintiff had taken his wife to the defendant's hospital for treatment of a broken hip. Because of the defective construction of the plaintiff's wife's room, rain water leaked into the room through the windows "to such an extent that the floor of the room was covered with water to a depth of more than one inch on several occasions." *Id.* at 661-62, 90 S.E. at 809. The room was so cold and damp as a result that the plaintiff's wife eventually contracted pneumonia and died. The plaintiff sought to recover for the "great pain and mental anguish" he suffered "in witnessing the agony and suffering of his said wife while lingering with . . . pneumonia, and in the act and article of death resulting therefrom." *Id.* at 662, 90 S.E. at 809. This Court reversed the trial court's dismissal of the plaintiff's action, holding that: "We see no reason why . . . the husband . . . should not recover for the mental anguish occasioned by witnessing . . . [his wife's] suffering and death against the alleged author of such suffering and death." *Id.* at 663, 90 S.E. at 810.

This Court reached a contrary result in *Michigan Sanitarium and Benevolent Ass'n v. Neal*, 194 N.C. 401, 139 S.E. 841 (1927). Mrs. Neal, who had placed her son in a sanitarium for treatment, alleged that because of the sanitarium's negligent treatment of her son, "instead of being benefited," he "sustained . . . a violent

derangement of mind and temporary loss of sanity." *Id.* at 402, 139 S.E. at 841. Because of her son's derangement, Mrs. Neal "suffered great mental anguish." *Id.* Despite the close personal relationship between Mrs. Neal and her son and the fact that the sanitarium almost certainly knew of this relationship, this Court held that Mrs. Neal's "damages are too remote to be made the subject of an action." *Id.* at 403, 139 S.E. at 842.

As in *Neal*, we hold in the case at bar that the plaintiffs' alleged *severe* emotional distress arising from their concern for their son was a possibility "too remote" to be reasonably foreseeable. Here, it does not appear that the defendant had any actual knowledge that the plaintiffs existed. Further, while it may be natural to assume that any person is likely to have living parents or friends and that such parents or friends may suffer some measure of emotional distress if that person is severely injured or killed, those factors are not determinative on the issue of foreseeability. The determinative question for us in the present case is whether, absent specific information putting one on notice, it is reasonably foreseeable that such parents or others will suffer "severe emotional distress" as that term is defined in law. We conclude as a matter of law that the *possibility* (1) the defendant's negligence in serving alcohol to Travis (2) would combine with Travis' driving while intoxicated (3) to result in a fatal accident (4) which would in turn cause Travis' parents (if he had any) not only to become distraught, but also to suffer "severe emotional distress" as defined in *Ruark*, simply was a possibility too remote to permit a finding that it was reasonably foreseeable. This is so despite the parent-child relationship between the plaintiffs and Travis. With regard to the other factors mentioned in *Ruark* as bearing on, *but not necessarily determinative of,* the issue of reasonable foreseeability, we note that these plaintiffs did not personally observe any negligent act attributable to the defendant. However, we reemphasize here that any such factors are merely matters to be considered among other matters bearing on the question of foreseeability. *Ruark*, 327 N.C. at 305, 395 S.E.2d at 98. It is well established under North Carolina law that such factors are *not* determinative requirements to be applied mechanically. *Id.* at 291, 395 S.E.2d at 89.

As we reverse the Court of Appeals on the issue of foreseeability, we do not consider or address the other defense proffered by the defendant—that Travis' contributory negligence in driving

while highly intoxicated is imputed to the plaintiffs, thereby barring their claim.

For the foregoing reasons, the decision of the Court of Appeals, reversing the trial court's order granting the defendant's motion to dismiss, is reversed. This case is remanded to the Court of Appeals for reinstatement of the trial court's order.

REVERSED AND REMANDED.

Justice MEYER concurring in result.

I concur only in the result reached by the majority. I continue, primarily for the reasons stated in my dissent and that of Justice Webb in *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 307, 318, 395 S.E.2d 85, 99, 106 (1990), to believe that this Court should place some limitations on the nebulous "foreseeability" rule adopted by the majority. Those restrictions should, in accord with those adopted by the overwhelming majority of jurisdictions, be based on the relationship of the claimant to the injured or deceased person and the proximity of perception as well as the severity of the claimant's mental or emotional injury. For limitations on foreseeability based on plaintiff's relationship to the victim, *see, e.g., Thing v. La Chusa*, 48 Cal. 3d 644, 667-68, 771 P.2d 814, 829-30, 257 Cal. Rptr. 865, 880 (1989) (mother of victim is "closely related"); *Elden v. Sheldon*, 46 Cal. 3d 267, 273, 758 P.2d 582, 587, 250 Cal. Rptr. 254, 258 (1988) (unmarried cohabitant denied recovery); *Dillon v. Legg*, 68 Cal. 2d 728, 741, 441 P.2d 912, 920, 69 Cal. Rptr. 72, 80 (1968) (mother of victim is "closely related"); *Quesada v. Oak Hill Improvement Co.*, 213 Cal. App. 3d 596, 610, 261 Cal. Rptr. 769, 778, *reh'g denied & op. modified, rev. denied* (1989) (niece given opportunity to prove sufficiently close relationship). For limitations on foreseeability based on the proximity of perception, *see, e.g., Thing v. La Chusa*, 48 Cal. 3d at 669, 771 P.2d at 830, 257 Cal. Rptr. at 881 (recovery denied to mother who was neither present at scene of accident nor aware that son was being injured); *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 350, 268 Cal. Rptr. 309, 329, *rev. denied* (1990) (plaintiffs must be on the scene and *"then* aware [that decedent] was being injured by [the tort-feasor's] negligent conduct"); *Kelley v. Kokua Sales & Supply, Ltd.*, 56 Haw. 204, 209, 532 P.2d 673, 676 (1975) (physical proximity to scene of tort is determining factor); *Wilder v. City of Keene*, 131 N.H. 599, 604, 557 A.2d 636, 639 (1989) (recovery denied to parents who neither

saw nor heard collision); *Burris v. Grange Mutual Cos.*, 46 Ohio St. 3d 84, 93, 545 N.E.2d 83, 91 (1989) (recovery denied to parent who had "no sensory perception of the events surrounding the accident"); *Gain v. Carroll Mill Co.*, 114 Wash. 2d 254, 261, 787 P.2d 553, 557 (1990) (plaintiff required to be "present at the scene of the accident and/or arrive shortly thereafter").

I also believe that this Court should require the joinder of any negligent infliction of emotional distress claim with the suit on the underlying wrongful death or personal injury claim. The jury would thereby be able to view the claims in their proper context and fashion its remedies accordingly. To allow the parents or other loved ones to bring a wrongful death claim separate and apart from their negligent infliction of emotional distress claim raises the possibility of inconsistent verdicts based on the same act of negligence and, in many cases, double recoveries by the same parties for the same loss.

This approach is not without precedent in North Carolina law. In *Nicholson v. Hospital*, 300 N.C. 295, 266 S.E.2d 818 (1980), this Court held that

> a spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries.

*Id.* at 304, 266 S.E.2d at 823. A claim of negligent infliction of emotional distress flowing from an injury to a third party bears sufficient resemblance in all pertinent respects to a claim for loss of consortium to merit requiring the two claims to be joined in the same action. *See Ruark*, 327 N.C. at 314-15, 395 S.E.2d at 103 (Meyer, J., dissenting).