IN THE SUPREME COURT OF NORTH CAROLINA

No. 383A19

Filed 18 December 2020

DELIA NEWMAN *et ux.*

v.

HEATHER STEPP *et ux.*

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 267 N.C. App. 232, 833 S.E.2d 353 (2019), reversing an order granting judgment on the pleadings in favor of defendants entered on 9 January 2019 by Judge Gregory Horne in Superior Court, Henderson County, and remanding to the trial court for further proceedings. Heard in the Supreme Court on 1 September 2020.

*F.B. Jackson & Associates Law Firm, PLLC, by Frank B. Jackson and James L. Palmer, for plaintiff-appellees.*

*Ball Barden & Cury P.A., by J. Boone Tarlton and Ervin L. Ball Jr., for defendant-appellants.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and Linda Stephens, for North Carolina Association of Defense Attorneys, amicus curiae.*

MORGAN, Justice.

Our review in this matter requires the Court to apply well-established precedent to a trial court's order granting judgment on the pleadings regarding a claim for negligent infliction of emotional distress. Viewing the specific facts alleged here in the light most favorable to plaintiffs, we conclude that the trial court erred by entering judgment on the pleadings in favor of defendants.

*Factual Background and Procedural History*

In this tragic case, the facts are undisputed. On the morning of 26 October 2015, plaintiff Delia Newman took her two-year-old daughter Abagail, referred to as "Abby," to the residence of defendants Heather and James Stepp in Hendersonville. Delia Newman had a scheduled training class for her ultrasound certification at A-B Technical Community College on this date. Defendants were providing childcare in an unlicensed day care at defendants' home where the couple regularly cared for Abby and other children. At about 8:00 a.m., Abby and defendants' several minor children entered defendants' kitchen where a 12-gauge shotgun belonging to James Stepp, which he had used for hunting on the previous day, had been left on the kitchen table of defendants' home. The firearm was loaded and was not secured by safety, trigger lock, or other mechanism. One of defendants' children under the age of five years somehow discharged the shotgun and Abby was struck in the chest at close range. Shortly thereafter, Heather Stepp contacted emergency services for help.

Plaintiff Jeromy Newman, Abby's father, was a volunteer firefighter. He heard a report over his citizens band (CB) radio about "a young female child [who] was critically wounded by the discharge of a shotgun at close range at the babysitter's home and that her condition was extremely critical." When Jeromy Newman heard defendants' address over the CB radio as the location of the incident, he drove towards defendants' home and also contacted his wife by telephone. While en route to defendants' residence, Jeromy Newman saw the ambulance which he learned

"contain[ed] his daughter who was still alive at the time" and followed the emergency vehicle to the hospital where he observed Abby being removed from the ambulance and taken inside the building. Delia Newman's training class was occurring near the hospital where Abby was taken so, after receiving the telephone call from her husband, Delia Newman reached the hospital shortly after Abby had arrived. At that point, Delia Newman was informed of Abby's death and was allowed to hold Abby's body for an extended period of time.

On 26 June 2018, plaintiffs filed a complaint which included claims for negligent infliction of emotional distress, intentional infliction of emotional distress, wrongful death, and loss of consortium. Plaintiffs voluntarily dismissed their wrongful death claim without prejudice on 16 August 2018. On 2 October 2018, with consent of defendants, plaintiffs filed an amended complaint. In their amended complaint, plaintiffs alleged, *inter alia*, the following:

> 32. Defendants failed to unload the firearm prior to laying it on the kitchen table, where it was readily available to the minor children that had unfettered access to the entire home.
>
> 33. Defendants failed to "check" the firearm to [ensure] it was unloaded prior to allowing the [plaintiffs'] child inside their home.
>
> 34. Defendants failed to properly educate their young children regarding firearms and the dangers involved with "playing" with said firearm.
>
> 35. Defendants failed to [ensure] that they had the proper training prior to possessing such a firearm.

36. Defendants failed to properly supervise the minor children that were in their home.

37. That the actions of the [d]efendants were a direct and proximate cause of the injuries and death of [Abby].

. . . .

39. It was reasonably foreseeable that the conduct of the [d]efendants, and the wounding and death of [Abby] would cause the [p]laintiffs severe emotional distress, including but not limited to:

> a. Both [p]laintiffs have incurred severe emotional distress. The mother has incurred such severe emotional distress that she has been under constant psychiatric care and has been placed on numerous strong anti-depressants as well as other medications.
>
> b. The mother has had etched in her memory the sight of her lifeless daughter in her arms at Mission Hospital.
>
> c. The mother has convinced herself that she also is going to die, because God would not allow her to suffer as she has suffered without taking her life also.
>
> d. The mother is still unable to deal with the possessions of her dead daughter but has kept every possession in a safe place.
>
> e. At times[,] the mother has wished death for herself.
>
> f. The mother has not been able to tend to her usual household duties and has stopped her efforts to obtain the degree she had sought . . . .

g. There are days the mother has trouble leaving her home.

h. Both [p]laintiffs have lost normal husband and wife companionship and consortium.

i. As a result of all the aforesaid, the mother has been rendered disabled for periods of time since her daughter's death.

On 15 November 2018, defendants filed their answer, along with a motion for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure. N.C.G.S. § 1A-1, Rule 12(c) (2019). The trial court heard defendants' motion on 3 December 2018. On 9 January 2019, the trial court filed a corrected order granting judgment on the pleadings, dismissing all three of plaintiffs' remaining claims. On 27 December 2018, plaintiffs appealed from the trial court's judgment in favor of defendants. Plaintiffs filed an amended written notice of appeal from a Corrected Judgment of Dismissal on 10 January 2019.

On appeal, plaintiffs argued that their complaint sufficiently alleged negligent infliction of emotional distress so as to withstand defendants' motion for judgment on the pleadings. *See* N.C.G.S. § 1A-1, Rule 12(c). The parties and the entire panel of the lower appellate court agreed that the dispositive issue in the case was whether plaintiffs' allegations regarding foreseeability were sufficient to support a claim for negligent infliction of emotional distress as a result of Abby's shooting and resulting death. *Newman v. Stepp*, 267 N.C. App. 232, 833 S.E.2d 353 (2019). To sustain a claim

for negligent infliction of emotional distress, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) *it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . .* , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (emphasis added).

The Court of Appeals panel was divided on the question of foreseeability. The majority held that "plaintiffs properly alleged severe emotional distress to support foreseeability in their claim of negligent infliction of emotional distress" and therefore reversed the trial court's ruling in favor of defendants for judgment on the pleadings and remanded the matter for further proceedings. *Newman*, 267 N.C. App. at 233, 833 S.E.2d at 355. The dissent in the lower appellate court cited and considered the same case law as the majority, but in the view of the dissenting judge, "[p]laintiffs' allegations rely *solely* upon the existence of a parent-child relationship and the aftermath and effects they suffered from the wrongful death of their child," and thus they "cannot sustain a claim for negligent infliction of emotional distress." *Id.* at 243–44, 833 S.E.2d at 361 (Tyson, J., dissenting).[1] On 1 October 2019, defendants filed in

---

[1] The dissenting judge also took issue with the majority opinion's direction to the trial court on remand concerning the loss of consortium claim, first stating that the claim was not before the Court of Appeals and further opining that a claim for loss of consortium resulting from a death may be brought *only* as an ancillary claim to a wrongful death action, citing *Keys v. Duke Univ.*, 112 N.C. App. 518, 520, 435 S.E.2d 820, 821 (1993). *Newman v. Stepp*, 267 N.C. App. 232, 251, 833 S.E.2d 353, 366 (2019) (Tyson, J., dissenting).

this Court a notice of appeal on the basis of the dissent in the Court of Appeals. *See* N.C.G.S. § 7A-30(2) (2019).

*Analysis*

The question before this Court is whether judgment on the pleadings was appropriate in this case, where the underlying claim was negligent infliction of emotional distress, a claim primarily focused upon the element of foreseeability in light of the facts and circumstances presented in this case. After careful consideration, we conclude that the averments contained in plaintiffs' complaint were sufficient as to the element of foreseeability for this case to proceed beyond the pleading stage of this legal controversy. Therefore, we hold that the trial court erred by allowing judgment on the pleadings for defendants.

We begin with an identification of the proper standard of review to be applied in this matter. In considering a motion for judgment on the pleadings, a "trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). This high standard is imposed because

> [j]udgment on the pleadings is a summary procedure and the judgment is final. Therefore, each motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits. The movant is held to a strict standard and must

> show that no material issue of facts exists and that he is
> clearly entitled to judgment.

*Id.* (citations omitted).

As the non-moving party, plaintiffs are entitled to have the trial court to view the facts and permissible inferences from plaintiffs' complaint in the light most favorable to them, with plaintiffs' factual allegations taken as true and defendants' opposing responses taken as false. With this established approach, it is apparent that the first and third elements of a claim for negligent infliction of emotional distress as articulated in *Johnson* exist in the present case. In assessing foreseeability, this Court has stated that "the 'factors to be considered' include, *but are not limited to*: (1) 'the plaintiff's proximity to the negligent act' causing injury to the other person, (2) 'the relationship between the plaintiff and the other person,' and (3) 'whether the plaintiff personally observed the negligent act.'" *Sorrells v. M.Y.B. Hosp. Ventures of Asheville*, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993) (quoting *Johnson*, 327 N.C. at 305, 395 S.E.2d at 98).

Turning to the substance of the negligent infliction of emotional distress claim, it is clear that "a plaintiff may recover for his or her severe emotional distress arising due to concern for another person, *if* the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and *foreseeable* result of the defendant's negligence." *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97. As noted above, plaintiffs' allegations were undisputed that defendants' negligent act of leaving a

loaded shotgun unsecured and accessible to a group of young children was the proximate cause of both Abby's death and plaintiffs' resulting mental anguish and suffering; therefore, only the sufficiency of the allegations regarding the element of foreseeability remains for this Court's determination in this appeal. *See id.* ("Although an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim; mere temporary fright, disappointment or regret will not suffice. In this context, the term 'severe emotional distress' means any emotional or mental disorder . . . ." (citation omitted)). In *Johnson*, we observed that "[f]actors to be considered on the question of foreseeability . . . include the plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act." *Id.* at 305, 395 S.E.2d at 98.

In recalling the three aforementioned *Johnson* factors undergirding a negligent infliction of emotional distress claim as we applied then in *Sorrells*, we further emphasized that

> *such factors are not mechanistic requirements* the absence of which will inevitably defeat a claim for negligent infliction of emotional distress. *The presence or absence of such factors simply is not determinative in all cases.* Therefore, North Carolina law forbids the mechanical application of any arbitrary factors . . . for purposes of determining foreseeability. Rather, the question of reasonable foreseeability under North Carolina law *must be determined under all the facts presented, and should be*

> *resolved on a case-by-case basis* by the trial court and, where appropriate, by a jury.

*Sorrells*, 334 N.C. at 672–73, 435 S.E.2d at 322 (extraneity omitted) (emphasis added). *See also Johnson*, 327 N.C. at 291, 395 S.E.2d at 89 ("[O]ur law includes *no arbitrary requirements to be applied mechanically* to claims for negligent infliction of emotional distress." (emphasis added)).

Relying on their interpretation of this standard and in light of the facts alleged in plaintiffs' complaint, defendants contend that dismissal on the pleadings was appropriate because plaintiffs did not observe and were not in close proximity to the shooting or the death of Abby. Among other cases which defendants cite, they most heavily regard *Gardner v. Gardner*, 334 N.C. 662, 435 S.E.2d 324 (1993), and *Andersen v. Baccus*, 335 N.C. 526, 439 S.E.2d 136 (1994), as factually analogous to, and legally controlling on, the facts of the case at bar.

In *Gardner*, the plaintiff, the mother of a thirteen-year-old son, sued the child's father for negligent infliction of emotional distress after the youngster, while riding in a truck being operated by the father, was injured when the father negligently drove the vehicle into a bridge abutment, seriously injuring the child. *Gardner*, 334 N.C. at 663, 435 S.E.2d at 326. The mother was alerted to the accident by a telephone call and upon rushing to the hospital where her son had been transported, saw the child being wheeled into the emergency room by medical personnel as resuscitation efforts were instituted. *Id.* at 663–64, 435 S.E.2d at 326. The mother did not see her child

again but shortly thereafter was informed that her son had died. *Id.* at 664, 435

S.E.2d at 326. In rendering the opinion in *Gardner*, this Court stated that

> [t]he trial court treated defendant's motion to dismiss as a motion for summary judgment. For purposes of that motion the parties stipulated that their son had died as a result of defendant's negligence and that plaintiff had suffered severe emotional distress as a result of the accident and death. The trial court granted summary judgment as to plaintiff's claim for [negligent infliction of emotional distress] and dismissed that claim with prejudice. It ruled that, as a matter of law, plaintiff could not establish a claim for [negligent infliction of emotional distress] because she did not witness the accident nor was she in sufficiently close proximity thereto to satisfy the "foreseeability factors" set forth in *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (1990).
>
> On appeal, the Court of Appeals held that plaintiff's emotional distress as a result of defendant's negligence was foreseeable. Emphasizing that the [*Johnson*] factors were not requirements for foreseeability but were "*to be considered* on the question of foreseeability," the court stated:
>
>> In common experience, a parent who sees its mortally injured child soon after an accident, albeit at another place, perceives the danger to the child's life, and experiences those agonizing hours preceding the awful message of death may be at no less risk of suffering a similar degree of emotional distress than . . . a parent who is actually exposed to the scene of the accident.
>
> *Gardner v. Gardner*, 106 N.C. App. 635, 639, 418 S.E.2d 260, 263 (1992). The [Court of Appeals] held that defendant "could have reasonably foreseen that his negligence might be a direct and proximate cause of the plaintiff's emotional distress," *id.*, and it accordingly reversed the trial court.

*Id.* at 664–65, 435 S.E.2d at 326 (fifth alteration in original). The dissenting judge at the Court of Appeals in *Gardner* opined that the claim for negligent infliction of emotional distress must fail because the plaintiff "did not observe and was not in close proximity to the negligent act," the truck accident. *Id.* at 665, 435 S.E.2d at 326. Upon review, this Court quoted the *Johnson* factors, but emphasized that in *Johnson* itself

> [n]otably, these factors were not termed "elements" of the claim. They were neither requisites nor exclusive determinants in an assessment of foreseeability, but they focused on *some* facts that could be particularly relevant in any one case in determining the foreseeability of harm to the plaintiff. Whatever their weight in this determination, we stressed that "[q]uestions of foreseeability and proximate cause must be determined under *all* the facts presented" in each case.

*Id.* at 666, 435 S.E.2d at 327 (second alteration in original) (citing *Johnson*, 327 N.C. at 305, 395 S.E.2d at 98). Thus, this Court in *Gardner*, just as in *Johnson*, continued to focus on the importance of flexibility regarding the pertinent factors to be considered in evaluating allegations of foreseeability when reviewing a claim for negligent infliction of emotional distress. Ultimately, in *Gardner*, this Court reversed the decision of the Court of Appeals, finding that the plaintiff's allegations were not sufficient to sustain her claim for negligent infliction of emotional distress.

> [The p]laintiff was not . . . in close proximity to, nor did she observe, defendant's negligent act. At the time defendant's vehicle struck the bridge abutment, plaintiff was at her mother's house several miles away. This fact, *while not in itself determinative*, unquestionably militates against defendant's being able to foresee, at the time of the

-12-

> collision, that plaintiff would subsequently suffer severe emotional distress as a result of his accident. Because she was not physically present at the time of defendant's negligent act, plaintiff was not able to see or hear or otherwise sense the collision or to perceive immediately the injuries suffered by her son. Her absence from the scene at the time of defendant's negligent act, *while not in itself decisive*, militates against the foreseeability of her resulting emotional distress.

*Id.* at 666–67, 435 S.E.2d at 328 (emphases added).

In *Andersen*, the plaintiff husband filed a complaint against defendant which included a claim for negligent infliction of emotional distress as a result of a traffic accident in which the vehicle being driven by defendant collided with the vehicle being operated by plaintiff's wife upon defendant's driving maneuver to avoid a collision with a third vehicle. Plaintiff did not see the accident occur but was present at the scene of the accident before his wife—who was with child at the time—was removed from her wrecked vehicle and accident site. *Andersen*, 335 N.C. at 527, 439 S.E.2d at 137. After being freed, "[the plaintiff's wife] was taken to a local hospital and the next day gave birth to a stillborn son . . . . [The] plaintiff's wife died from injuries allegedly received in the accident." *Id.* Defendants prevailed in the trial court on summary judgment on plaintiff's claim of negligent infliction of emotional distress. *Id.* at 528, 439 S.E.2d at 137. The Court of Appeals reversed the trial court on this issue, concluding that it was reasonably foreseeable that the plaintiff would suffer such distress as a result of the alleged negligence. *Id.* at 530, 439 S.E.2d at 138–39. This Court reversed, interspersing in our analysis the law of *Johnson* with the salient

facts of *Sorrells*—a case in which this Court held that it was not reasonably foreseeable that defendant business which served alcohol to the twenty-one-year-old son of plaintiff parents would negligently inflict emotional distress upon the parents as a result of the son's death when his loss of control of his motor vehicle caused him to strike a bridge abutment—as we explained the rationale for our determination of the lack of foreseeability in *Andersen*:

> Holding that [the] plaintiffs' alleged distress arising from their concern for their son was a possibility too remote to be reasonably foreseeable, the Court [in *Sorrells*] said:
>
>> Here, it does not appear that the defendant had any actual knowledge that the plaintiffs existed. Further, while it may be natural to assume that any person is likely to have living parents or friends [who might] suffer some measure of emotional distress if that person is severely injured or killed, those factors are not determinative on the issue of foreseeability. The determinative question for us in the present case is whether, absent specific information putting one on notice, it is reasonably foreseeable that such parents or others will suffer "severe emotional distress" as that term is defined in law. We conclude as a matter of law that the *possibility* (1) the defendant's negligence in serving alcohol to [the plaintiffs' child] (2) would combine with [the plaintiffs' child's] driving while intoxicated (3) to result in a fatal accident (4) which would in turn cause [the plaintiffs' child's] parents (if he had any) not only to become distraught, but also to suffer "severe emotional distress" as defined in [*Johnson*], simply was a possibility too remote to permit a finding that it was reasonably foreseeable.

> This is so despite the parent-child relationship between the plaintiffs and [their child]. With regard to the other factors mentioned in [*Johnson*] as bearing on, *but not necessarily determinative of*, the issue of reasonable foreseeability, we note that these plaintiffs did not personally observe any negligent act attributable to the defendant. However, we reemphasize here that any such factors are merely matters to be considered among other matters bearing on the question of foreseeability.

*Id.* at 531–32, 439 S.E.2d at 139 (third alteration in original) (quoting *Sorrells*, 334 N.C. at 674, 435 S.E.2d at 323)). Utilizing the unique, though comparable facts presented by the *Gardner* and *Sorrells* cases, in *Andersen* we held that the defendant

> could not reasonably have foreseen that her negligent act, if any, would cause [the] plaintiff to suffer severe emotional distress. While in this case [the] plaintiff observed his wife before she was freed from the wreckage, as in *Gardner*, plaintiff was not in close proximity to and did not observe [the] defendant['s] negligent act, if any. As in *Sorrells*, nothing suggests that [the defendant] knew of [the] plaintiff's existence. The forecast of evidence is undisputed that at the moment of impact [defendant] did not know who was in the car which her vehicle struck and had never met [plaintiff's wife]. Both *Gardner* and *Sorrells* teach that the family relationship between plaintiff and the injured party for whom [the] plaintiff is concerned is insufficient, standing alone, to establish the element of foreseeability. In this case as in *Sorrells* the possibility that the decedent might have a parent or spouse who might live close enough to be brought to the scene of the accident and might be susceptible to suffering a severe emotional or mental disorder as the result of [the defendant's] alleged negligent act is entirely too speculative to be reasonably foreseeable.

*Andersen*, 335 N.C. at 532–33, 439 S.E.2d at 140. Accordingly, this Court reversed the decision of the Court of Appeals, reinstating the trial court's entry of summary judgment for the defendants on the claim for negligent infliction of emotional distress. *Id.* at 533, 439 S.E.2d at 140.

The factual circumstances presented in this Court's opinions of *Gardner*, *Andersen*, and *Sorrells* upon which defendants, as well as our learned dissenting colleague, primarily rely to advance the position that the trial court was correct to grant a judgment on the pleadings to defendants regarding plaintiffs' claim for negligent infliction of emotional distress are readily distinguishable from those which are existent in the instant case. Fundamentally, here the concept of the foreseeability of the infliction of emotional distress resulting from defendants' negligent act of leaving a loaded and unsecured shotgun in an unattended state within reach of a group of young children—as compared to the foreseeability of a defendant father inflicting emotional distress upon the mother for the alleged negligent act of having a traffic accident which killed their passenger son in *Gardner*, the foreseeability of the infliction of emotional distress resulting from defendant motor vehicle operator's alleged negligent act in killing an expecting mother and causing the baby to be stillborn because defendant swerved to avoid a collision with a third vehicle in *Andersen*, and the foreseeability of the infliction of emotional distress upon the parents of an adult son who was killed in the operation of his motor vehicle after defendant business committed the allegedly negligent act of serving alcoholic

beverages to the son of plaintiffs during his patronage of defendant business—is a measure of foreseeability indisputably governed by the factors which this Court articulated in *Johnson* which is necessary for a jury to determine in light of the "case-by-case basis" premised upon "all the facts presented" which this Court expressly discussed in *Sorrells*. 334 N.C. at 673, 435 S.E.2d at 322 (quoting *Johnson*, 327 N.C. at 305, 395 S.E.2d at 98).

While the dissenting opinion is careful to quote the direction given in *Sorrells* that the guiding "factors are not mechanistic requirements" and the mandate established by *Johnson* that negligent infliction of emotional distress "cases must be resolved on a case-by-case basis, considering all facts presented," the dissent nevertheless acquiesces in its acceptance of defendants' automated application of the *Johnson* factors without expending the requisite effort to navigate the nuances of the configuration of fact patterns. For example, in the present case, plaintiffs and defendants knew each other to such a degree that plaintiffs allowed their young child to spend appreciable amounts of time in defendants' home; however, in *Sorrells*, in noting that foreseeability was not reasonable for a negligent infliction of emotional distress claim, this Court expressly recognized that "it does not appear that the defendant had any actual knowledge that the plaintiffs existed." *Sorrells*, 334 N.C. at 674, 435 S.E.2d at 323. In *Andersen*, in noting that defendant "could not reasonably have foreseen that her negligent act, if any, would cause plaintiff to suffer severe emotional distress," we deemed it to be germane that "nothing suggests that [the

defendant] knew of plaintiff's existence. The forecast of evidence is undisputed that at the moment of impact [the defendant] did not know who was in the car which her vehicle struck and had never met [the plaintiff's wife]." *Andersen*, 335 N.C. at 532–33, 439 S.E.2d at 140.

The same cases from this Court which the dissent and defendants invoke to support their position in the case sub judice that the foreseeability factors set forth in *Johnson* did not allow plaintiffs to sustain actions for negligent infliction of emotional distress are the same cases which this Court now reaffirms afford plaintiffs in the instant case the right to pursue their claim for negligent infliction of emotional distress beyond the pleading stage. Although we held in the cited series of cases that the foreseeability factor of *Johnson* did not exist due to such circumstances as the defendant's lack of knowledge of plaintiff's existence, the prospect of parents suffering "severe emotional distress," and the inability of the defendant to know the identity of the fatally injured party, conversely we hold that the foreseeability factor of *Johnson* does exist in the case at bar because defendants have knowledge of plaintiffs' existence, there is the prospect of plaintiffs suffering severe emotional distress, and defendants were able to know the identity of the fatally injured party Abby.

*Conclusion*

We conclude that plaintiffs' allegations regarding the factor of foreseeability as addressed in *Johnson* were sufficient to support their claim for negligent infliction of emotional distress against defendants. Consequently, the trial court erred in entering

judgment on the pleadings in favor of defendants. In affirming the Court of Appeals, we reiterate the established standard for a trial court's consideration of a defending party's motion to for judgment on the pleadings and, when such a motion is made in a negligent infliction of emotional distress action, the question of reasonable foreseeability must be determined under all of the facts presented and should be resolved on a case-by-case basis instead of mechanistic requirement associated with the presence or absence of the *Johnson* factors.

AFFIRMED.

Justice NEWBY dissenting.

The heartbreak a parent endures from the loss of a child simply cannot be overstated. "The shock and anguish suffered by plaintiffs upon learning of the wholly unexpected death of their young daughter is unfathomable to anyone not experiencing a similar loss." *Newman v. Stepp*, 267 N.C. App. 232, 242, 833 S.E.2d 353, 360 (2019) (Tyson, J., dissenting). I also agree with the dissent at the Court of Appeals that, "[w]hile nothing can change these facts nor restore the child plaintiffs have lost, the law affords these parents a claim and remedy of monetary compensation for damages they suffered through a claim for wrongful death." *Id.* In an attempt to fashion a different legal remedy to address this tragedy, the majority strays from our jurisprudence regarding claims for negligent infliction of emotional distress (NIED). Were we writing on a blank slate, I could agree as my sympathies lie with plaintiffs; however, we have several cases that determine foreseeability in the context of a NIED claim by applying the factors this Court articulated in *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*, 327 N.C. 283, 305, 395 S.E.2d 85, 98 (1990). These cases also have tragic facts where individuals lost dear loved ones—children, spouses, and parents—under terrible circumstances. In each of these cases we held that the alleged NIED was not foreseeable. Faithfully applying this precedent, the trial court correctly dismissed this action. I respectfully dissent.

To properly plead a claim for NIED, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97. In this case, we address whether it was reasonably foreseeable that the negligent conduct would cause plaintiffs severe emotional distress. We have previously set forth factors to be considered in determining whether it was reasonably foreseeable that the conduct at issue would cause severe emotional distress. These factors "include the plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act." *Id.* at 305, 395 S.E.2d at 98. Our cases emphasize that "such factors are not mechanistic requirements," *Sorrells v. M.Y.B. Hosp. Ventures of Asheville*, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993) (emphasis omitted), and that courts must evaluate NIED claims on a case-by-case basis, considering all facts presented, *Johnson*, 327 N.C. at 305, 395 S.E.2d at 98. Nonetheless, our case law has emphasized that the parent-child relationship standing alone is not enough. We have never previously focused on the nature of the negligent act. Generally, foreseeability requires plaintiffs to be present during the negligent act and perhaps observe the resulting injury. The majority fails to apply these factors and places the foreseeability determination with a jury.

The case before us is controlled by our decision in *Gardner v. Gardner*, 334 N.C. 662, 435 S.E.2d 324 (1993), which has all of the factors present in this case. There, a thirteen-year-old child was injured in a vehicular wreck when his father recklessly ran into a bridge abutment on a rural road. *Id.* at 663–64, 435 S.E.2d at 326. The plaintiff, the child's mother, found out about the accident over the phone. *Id.* at 663, 435 S.E.2d at 326. She then went directly to the local hospital's emergency room (ER) where she saw her son being wheeled into the ER and medical professionals attempting to resuscitate him. *Id.* at 663–64, 435 S.E.2d at 326. The plaintiff did not see her son thereafter and was later informed that he had died. *Id.* at 664, 435 S.E.2d at 326.

The plaintiff sued, claiming NIED. *Id.* She alleged that her husband's reckless driving that caused the accident violated at least four criminal statutes. The trial court granted summary judgment for the defendant-husband on the NIED claim. *Id.* The wife appealed to the Court of Appeals. *Gardner v. Gardner*, 106 N.C. App. 635, 418 S.E.2d 260 (1992). After considering the above facts and stating its view of the rules set forth in *Johnson*, the Court of Appeals reversed the trial court's judgment for many of the same reasons that the majority utilizes in its opinion in the present case. *Id.* at 639, 418 S.E.2d at 263. In analyzing the impact of the parent-child relationship and a plaintiff's proximity to the scene of the accident, the Court of Appeals stated that

> [i]n common experience, a parent who sees its mortally injured child soon after an accident, albeit at another place, perceives the danger to the child's life, and experiences those agonizing hours preceding the awful message of death may be at no less risk of suffering a similar degree of emotional distress than . . . a parent who is actually exposed to the scene of the accident.

*Id.* Thus, the Court of Appeals ultimately concluded that the parent-child relationship combined with the fact that the plaintiff saw the child soon after the accident was sufficient to establish the foreseeability element required for a NIED claim. *Id.*

This Court, however, reversed the Court of Appeals' decision, rejecting its reasoning. *Gardner*, 334 N.C. at 668, 435 S.E.2d at 328. We held that the trial court properly granted summary judgment on the plaintiff-wife's NIED claim. *Id.* In doing so, this Court again explained the *Johnson* foreseeability factors and utilized those factors to reach its result. *Id.* at 666–68, 435 S.E.2d at 327–28. We found persuasive that the wife was not in close proximity to her husband's negligent act, nor did she observe the resulting wreck; instead, the plaintiff was several miles away when the accident happened, which "militates against the foreseeability of [the plaintiff's] resulting emotional distress." *Id.* at 667, 435 S.E.2d at 328. Despite the fact that the complaint alleged that the husband's reckless driving violated at least four criminal statutes, this Court did not even mention that the nature of the negligent act could be a factor.

Moreover, recognizing that there must be a showing of foreseeability of severe emotional distress, this Court reasoned that the plaintiff-wife had not alleged that the husband knew that she would be especially susceptible to severe emotional distress. Severe emotional distress as defined by law requires allegations or a forecast of evidence of "any emotional or mental disorder, such as . . . neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.* (alteration in original) (quoting *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97). As this Court explained, "[w]hile anyone should foresee that virtually any parent will suffer *some* emotional distress—'temporary disappointment . . . or regret'—in the circumstances presented, to establish a claim for NIED the law requires reasonable foresight of an emotional or mental disorder or other severe and disabling emotional or mental condition." *Id.* (second alteration in original). Thus, despite the fact that the husband certainly knew of his wife's relationship with their son, without the husband having knowledge or foresight that the wife would suffer *severe* emotional distress, we stated that the reasonable foreseeability element was not satisfied. *Id.* at 667–68, 435 S.E.2d at 328. Therefore, this Court concluded that the defendant-husband could not be held accountable for his actions though a NIED claim. *Id.* at 668, 435 S.E.2d at 328.

The facts in the present are similar to those in *Gardner*. Though defendants here knew of plaintiffs' parent-child relationship, that fact alone is inadequate. We

rejected that same reasoning in *Gardner*. Moreover, like *Gardner*, defendants here had no reason to know that plaintiffs would suffer severe emotional distress as defined by law, meaning emotional distress exceeding that distress any parent would suffer when losing a child. In *Gardner*, defendant-husband would have had even more of an intimate understanding of the potential of severe emotional distress his wife would have suffered from losing their child. Certainly a husband would have been in a better position to know of any particular susceptibility of his wife to suffer severe emotional distress than a daycare owner interacting with a child's parents.

Plaintiffs here were not present when the negligent act or the accident occurred, as they neither saw the shotgun negligently being placed and left on the table nor did they see the discharge of the shotgun that ultimately led to their daughter's death. The same was true in *Gardner*, where the plaintiff did not observe the accident, but only saw her child arriving at the hospital after learning of the accident through a phone call, just as the father here learned of the accident through a CB-radio communication. Further, in *Gardner*, the mother saw the child while emergency personnel were attempting to resuscitate him at the hospital, whereas neither parent did so here. Our cases repeatedly consider a plaintiff's absence from the scene of the negligent act or accident as militating against foreseeability, despite how soon after the accident plaintiffs saw an injured or deceased individual. Simply put, while certainly these facts are tragic and heartbreaking, under our existing case

law, it was not reasonably foreseeable that plaintiffs would endure severe emotional distress as defined by law to support a NIED claim.

The majority seeks to distinguish this case from *Gardner* because of the nature of the negligent act, noting that defendants' actions of leaving a loaded shotgun accessible to minors was egregious. The majority holds that severe emotional distress arising from that negligent act is more foreseeable than severe emotional distress caused by other types of negligent acts that also result in injury. The complaint in *Gardner* indicates the defendant's actions violated numerous criminal statutes as he carelessly and recklessly ran his truck into the bridge abutment. Nonetheless, our decision in *Gardner* did not attempt to evaluate the nature of the father's negligent act. It was simply not a factor in the foreseeability determination in *Gardner* or any of our other relevant cases. The question is not whether it *could be* reasonably foreseeable that a plaintiff would suffer severe emotional distress, but whether, under the specific facts presented, it *was* reasonably foreseeable that the plaintiff would suffer severe emotional distress as defined by law. Therefore, the majority's analysis primarily relies on a factor that this Court has not adopted in the past. Further, the majority now places the foreseeability determination with the jury, not the trial court.

Our foreseeability analysis in *Gardner* is consistent with our analysis of other cases where we have considered and rejected a plaintiff's NIED claim. In *Andersen v. Baccus*, the plaintiff-husband's pregnant wife had a car accident when the defendant swerved to avoid a vehicle driven by the a third person. 335 N.C. 526, 527, 439 S.E.2d

136, 137 (1994). The plaintiff did not witness the accident, but he went to the scene and saw his wife before she was freed from the wreckage. *Id.* The plaintiff's wife ended up giving birth to their baby, who was stillborn, and she later passed away as well. *Id.* The plaintiff brought a claim for punitive damages based on NIED, and the trial court granted summary judgment in the defendant's favor. *Id.* at 528, 439 S.E.2d at 137. Reviewing the case on appeal, this Court stated that the defendant's actions, while negligent, were not actions that were reasonably foreseeable to cause the plaintiff's severe emotional distress. *Id.* at 532, 439 S.E.2d at 140. Though the plaintiff observed his pregnant wife in her car before she was freed from the wreckage, even that was not enough to establish a NIED claim since the plaintiff was not in close proximity to nor did he observe the negligent act that caused his wife's and child's deaths. *Id.* at 532–33, 439 S.E.2d at 140. Moreover, we noted that the defendant did not know who was in the vehicle that the defendant struck. *Id.* at 533, 439 S.E.2d at 140. Specifically, "the family relationship between plaintiff and the injured party for whom plaintiff is concerned is insufficient, standing alone, to establish the element of foreseeability." *Id.* Therefore, this Court upheld the trial court's grant of summary judgment because it was not reasonably foreseeable that plaintiff would suffer severe emotional distress. *Id.* Notably again, we did not address whether the defendant's negligent actions violated any criminal laws.

In another case, *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, a 21-year-old college student was drinking alcohol at a bar. 334 N.C. at 671, 435 S.E.2d at 321.

The student's friends asked the bartenders not to serve the student any more drinks due to his intoxication and explained that the student had to drive himself home that evening. *Id.* Nevertheless, the employees continued to serve him alcohol. *Id.* When he was driving home, the student lost control of his car, struck a bridge abutment, and was killed. *Id.*

The student's parents brought a claim against the defendant-bar for NIED, which the trial court dismissed. *Id.* The Court of Appeals, however, reversed the trial court's decision. *Sorrells v. M.Y.B. Hosp. Ventures of Asheville*, 108 N.C. App. 668, 672, 424 S.E.2d 676, 680 (1993). In doing so, the Court of Appeals focused on the fact that the parents, despite not being at the scene, learned their son was killed in an automobile accident and that his body had been mutilated, which the Court of Appeals determined could be found to be reasonably foreseeable to cause severe emotional distress. *Id.* at 672, 424 S.E.2d at 679.

This Court, however, rejected the Court of Appeals' reasoning. *Sorrells*, 334 N.C. at 675, 435 S.E.2d at 323. In doing so, this Court applied the *Johnson* factors to determine whether the plaintiffs had established foreseeability. *Id.* at 672–73, 435 S.E.2d at 322. We first reasoned that the determinative question in the case was "whether, absent specific information putting one on notice, it is reasonably foreseeable that such parents or others will suffer 'severe emotional distress' as that term is defined in law." *Id.* at 674, 435 S.E.2d at 323. We noted that the defendant did not specifically know of the plaintiff-parents' existence, and more so, the

defendant did not know that the plaintiffs would suffer emotional distress like that described in *Gardner*, i.e., manifesting itself in mental and/or physical disorders. *Id.* Because of the lengthy chain of events that led to the student's death as well as the fact that the plaintiffs did not observe the accident or any of the defendant's negligent actions attributable to the student's death, this Court concluded that the trial court properly dismissed the plaintiffs' NIED claim. *Id.* at 675, 435 S.E.2d at 323.

The Court of Appeals has also utilized the *Johnson* foreseeability factors to reach similar results despite the tragic circumstances involved in those cases. *See Fields v. Dery*, 131 N.C. App. 525, 529, 509 S.E.2d 790, 792 (1998) (concluding that the plaintiff had not established foreseeability to maintain a NIED claim, despite the fact that she was driving behind her mother and saw the defendant violate a criminal statute and crash into her mother's car, since the defendant could not reasonably have foreseen that the deceased's daughter would be driving behind her and see the accident that caused her mother's death); *see also Riddle v. Buncombe Cnty. Bd. of Educ.*, 256 N.C. App. 72, 77, 805 S.E.2d 757, 762 (2017) (concluding that, despite the fact that the plaintiff, a close friend of the deceased, was present at and observed the accident, there was no allegation of a relationship making him particularly susceptible to suffering severe emotional distress, meaning that the plaintiff could not advance a NIED claim).

An analysis of the egregious nature of the negligent act is not mentioned as a foreseeability factor in any of our prior cases. The majority adds this new factor,

whether leaving a loaded shotgun accessible to minors was involved, to our NIED foreseeability jurisprudence and places the foreseeability determination with the jury. The *Johnson* factors have worked well for thirty years. We now embark into uncharted territory. The majority assures us that these new considerations will not open a floodgate of new NIED claims—only time will tell. The proper remedy under these circumstances is a wrongful death action, not a change to our NIED jurisprudence. Because I believe the trial court faithfully applied our NIED jurisprudence, I would affirm its decision. I respectfully dissent.